**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMSC-023

Filing Date: May 13, 2010

Docket No. 31,328

JOSE A. GARCIA,

      Petitioner,

v.

STATE OF NEW MEXICO,

      Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sandra A. Price, District Judge**

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**BOSSON, Justice.**

{1}     Defendant Jose Garcia pleaded guilty to intentional child abuse resulting in death, a crime that carries a life sentence where, as here, Child is under 12 years old. In this direct appeal, Defendant seeks leave to withdraw his guilty plea on the ground that it was not knowing and voluntary, due to ineffective assistance of counsel. Defendant claims that he pleaded guilty because trial counsel incorrectly advised him that negligent and intentional child abuse resulting in death are both "first degree felonies," carrying a 30-year prison

1

sentence, and that he could be convicted "even if it was an accident." After reviewing the record, the 2005 amendments to the child abuse statute, the noncapital sentencing guidelines, and the related case law, we agree that trial counsel's performance was deficient and prejudiced Defendant. We, therefore, reverse the trial court and remand to permit Defendant to withdraw his plea and for proceedings consistent with this Opinion.

## BACKGROUND

### Events Leading to Defendant's Arrest

{2}     Early on the morning of April 15, 2007, sheriff's deputies and paramedics responded to a call reporting the death of a 17-month-old child in San Juan County. When detectives arrived at the scene, they found the deceased child lying on the living room floor under a blanket, and they noticed "an obvious foot wear pattern" on her stomach. The officers then interviewed Defendant, 18 years old at the time, and Defendant's girlfriend, both of whom had been babysitting Child earlier that night.

{3}     During his interview with law enforcement, Defendant admitted that he had stepped on Child's foot earlier that evening and that she had made "a screech noise." Upon further questioning about whether "[Defendant] possibly stepped on [Child's] stomach," he stated that he "guessed that he could have" when he attempted to jump over her while she was lying on the floor under some clothing. The detectives noted that the pattern on the soles of Defendant's shoes was similar to the pattern on Child's stomach, and Defendant allowed his shoes to be taken into evidence.

{4}     Defendant's girlfriend informed the police that she did not know how Child was injured. She further stated that there were several points during the evening when Defendant was alone with Child. She claimed that Defendant had helped her babysit on several other occasions and that he had never hurt the children. At the conclusion of the investigation, Defendant was charged with Abuse of a Child - Intentional (Resulting in Death), Tampering with Evidence, and Aggravated Battery (Great Bodily Harm) (Household Member).

### Legislative History

{5}     The record indicates confusion throughout the proceedings regarding the child abuse charge and specifically (1) the precise crimes with which Defendant was charged, and (2) the potential punishments that Defendant faced. The child abuse charge therefore is the focus of this Opinion and requires a more detailed explanation.

{6}     The definition of child abuse is provided in NMSA 1978, Section 30-6-1(D) (2009), and has remained unchanged since 1973:

> Abuse of a child consists of a person *knowingly, intentionally or negligently*, and without justifiable cause, causing or permitting a child to be:

2

(1)     placed in a situation that may endanger the child's life or health;

(2)     tortured, cruelly confined or cruelly punished; or

(3)     exposed to the inclemency of the weather.

(Emphasis added.); *see also* 1973 N.M. Laws, ch. 360, § 10.

**{7}**     Prior to 2005, whether the accused acted intentionally or negligently was irrelevant for conviction and sentencing purposes: the statute punished both the same. *See* § 30-6-1. In fact, until 1993, Section 30-6-1(D) and its predecessor were interpreted by New Mexico's appellate courts to require only a showing of *civil* negligence. *See Santillanes v. State*, 115 N.M. 215, 219-23, 849 P.2d 358, 362-66 (1993) (overturning prior case law and holding that a conviction under Section 30-6-1(D) requires a showing of criminal negligence).

**{8}**     Rather than focusing on the *mens rea* of the accused, the pre-2005 statute differentiated the level of offense and sentence based on the effect of the abuse on the child. *See* § 30-6-1(E). When death or great bodily harm resulted, the offense was a first-degree felony punishable by 18 years in prison; in all other circumstances, child abuse in violation of Section 30-6-1(D) was a second- or third-degree felony, depending on whether it was a first or subsequent offense.

**{9}**     In 2005, the Legislature added several new provisions to the child abuse statute and the noncapital felony sentencing guidelines relating to child abuse resulting in death. *See* § 30-6-1(F) ("A person who commits *negligent* abuse of a child that results in the death of the child is guilty of a first degree felony." (Emphasis added.)); § 30-6-1(G) ("A person who commits *intentional* abuse of a child *twelve to eighteen years of age* that results in the death of the child is guilty of a first degree felony." (Emphasis added.)); § 30-6-1(H) ("A person who commits *intentional* abuse of a child *less than twelve years of age* that results in the death of the child is guilty of a *first degree felony resulting in the death of a child*." (Emphasis added.)); NMSA 1978, § 31-18-15(A) (2007) ("If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows: *(1) for a first degree felony resulting in the death of a child, life imprisonment . . . .*" (Emphasis added.)). These amendments, for the first time, differentiated levels of the offense based on the mental state of the accused and the age of the child.

**{10}**     Important for our analysis, the statutes continued to provide that a person is guilty of a "first degree felony," punishable by 18 years imprisonment, if that person commits (1) *negligent* child abuse resulting in the death of a child of any age, *see* § 30-6-1(F), or (2) *intentional* child abuse resulting in the death of a child between the ages of 12 and 18, *see* § 30-6-1(G); *see also* § 31-18-15(A)(3) (providing that the basic sentence of imprisonment for a "first degree felony" is 18 years).

**{11}**     However, the amended child abuse statute also provided that a person who commits *intentional* child abuse that results in the death of a child *under the age of 12* is guilty of a

3

"first degree felony *resulting in the death of a child*." Section 30-6-1(H) (emphasis added). To grasp the import of this last phrase, we look to the amended sentencing guidelines, which include a new noncapital felony—a "first degree felony resulting in the death of a child,"—which carries a sentence of life imprisonment. Section 31-18-15(A)(1).

{12} The history of the 2005 amendments demonstrates that the distinction between negligent and intentional child abuse resulting in death played an important role in their passage. The original bill was entitled, "An Act Relating to Criminal Sentencing; Imposing a Life Sentence for Child Abuse Resulting in Death When the Child is Under Twelve Years Old." S.B. 166, 47th Leg., 1st Sess. (N.M. 2005), *available at* http://legis.state.nm.us/Sessions/05%20Regular/bills/senate/ SB0166.pdf. The proposed bill would have imposed a life sentence, irrespective of the mental state of the accused. *See id.* However, when the bill came back from the Senate and House Judiciary Committees, its scope was narrowed to impose a life sentence for only *intentional* child abuse resulting in death of a child under 12 years old. *Id.* (as substituted by Senate Judiciary Committee), *available at* http:// legis.state.nm.us/Sessions/05%20Regular/bills/senate/SB0166JUS.pdf; *id.* (as amended by House Judiciary Committee) (emphasis added), *available at* http://legis.state.nm.us/Sessions/05%20Regular/bills/senate/SB0166JC1.pdf.

{13} Taken together, the amendments and their history show that the Legislature intended the phrase "first degree felony resulting in the death of a child" to designate an entirely different level of noncapital offense—one that results in life in prison which is unusual, if not unprecedented, for an offense other than first degree murder. The result is a new level of offense and a new prison sentence that is at least 66% longer than the 18-year sentence for any other "first degree felony."[1] *Compare* § 31-18-15(A)(3) (providing that the basic sentence of imprisonment for a first degree felony is 18 years) *with* § 31-18-15(A)(1) (providing that the basic sentence for a first degree felony resulting in the death of a child is life imprisonment). *See also Compton v. Lytle*, 2003-NMSC-031, ¶ 28, 134 N.M. 586, 81 P.3d 39 (holding that an individual sentenced to life in prison must serve a minimum of 30 years before being eligible for probation or parole). This new designation and sentence applies only to the crime of intentional child abuse when it results in the death of a child under 12 years old.[2]

---

[1]In 2007, the Legislature amended the noncapital sentencing guidelines to include "a first degree felony for aggravated criminal sexual penetration," which also carries a life sentence. *See* § 31-18-15(A)(2). This level of offense is unique to the crime of aggravated sexual penetration which became effective in 2007. *See* NMSA 1978, § 30-9-11(C) (2009) ("Aggravated criminal sexual penetration consists of all criminal sexual penetration perpetrated on a child under thirteen years of age with an intent to kill or with a depraved mind regardless of human life.").

[2]The Uniform Jury Instructions relating to child abuse resulting in death have not been revised since the passage of these amendments. *See generally* Rules 14-601 to -610

**The Charges Brought Against Defendant**

{14}    In this case, which arose nearly two years after these amendments were enacted, the State charged Defendant with "Abuse of a Child – Intentional (Resulting in Death)," related to the death of the 17-month-old Child.  However, nothing in the record reflects any awareness of the 2005 amendments.  No pleading cites the 2005 amendments, makes reference to "a first degree felony resulting in the death of a child," indicates that Defendant potentially faced a life sentence, or includes the Child's age or states that she was under 12 years old.[3]  Instead, all references to Defendant's child abuse charge are consistent with the pre-2005 version of the statute and describe the offense as "a first degree felony," which carries an 18-year sentence, not a "first degree felony resulting in the death of a child."

{15}    The record is similarly ambiguous on another point.  Our Court of Appeals held in 2004 that negligent and intentional child abuse resulting in death are separate crimes, neither subsumed within nor lesser included offenses of the other.  *See State v. Schoonmaker*, 2005-NMCA-012, ¶ 27, 136 N.M. 749, 105 P.3d 302 (filed in 2004), *rev'd on other grounds*, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105; *see also Schoonmaker*, 2008-NMSC-010, ¶ 46 n.4 ("We agree with the Court of Appeals[] . . . that intentional child abuse is not the same crime as, or a lesser included offense of, negligent child abuse.").  As a result, the State must charge both offenses in the alternative if it intends to seek a conviction on either ground.  *See Schoonmaker*, 2005-NMCA-012, ¶ 27 ("It is also clear that these two statutes are mutually exclusive—one cannot commit an intentional act and an unintentional but substantially risky act at the same time, even though the act is voluntary as to both and the evidence may be sufficient to charge both offenses as alternative theories.").

{16}    Put another way, where only intentional child abuse resulting in death is charged, that is the only offense for which an accused may be tried and convicted.  *See State v. Davis*, 2009-NMCA-067, ¶ 16, 146 N.M. 550, 212 P.3d 438 ("The indictment charged Defendant with intentional child abuse . . . and that was the only crime for which [the d]efendant could properly be tried and convicted.").  When charged with only the one offense, an accused can avoid conviction altogether by successfully arguing that if the accused caused the child's death, he or she did so negligently and not intentionally.

{17}    Here, the State charged Defendant with  "Abuse of a Child – *Intentional* (Resulting in Death)."  (Emphasis added.)  The same document, however, described the offense as "knowing[], intentional[] *or negligent*[]"—language taken directly from the child abuse

---

NMRA.  We refer this to the Uniform Jury Instructions for Criminal Cases Committee to bring the instructions into conformity with the amended statutes as soon as possible.

[3]The lone document in the record that alludes to the Child's age is the affidavit attached to the arrest warrant, which states that the Child was "an infant."

statute. *See* § 30-6-1(D) (emphasis added). Defendant then waived arraignment and pleaded "not guilty" to intentional child abuse resulting in death; neither the State nor the trial court demanded a plea to negligent child abuse resulting in death. The State never filed an amended criminal information that included a charge of negligent child abuse resulting in death, and Defendant never received or waived a probable cause determination as to that charge. Astonishingly, however, up until the scheduled date of trial both the prosecution and the defense inconsistently referred to the charge(s) against Defendant as including negligent child abuse resulting in death.

**{18}** On the morning of trial, Defendant agreed to plead guilty to the offense of intentional child abuse resulting in death. The agreement for the first time described the child abuse offense as "a first degree felony [that] carries a maximum penalty of 30 years in the DOC." In return, the State dropped the tampering and aggravated battery charges. The plea agreement notes the withdrawn charges but makes no mention of a charge of negligent child abuse resulting in death, further indicating that Defendant had never been charged separately with that offense.

**Plea Hearing**

**{19}** Unfortunately nothing at the plea hearing alleviated the ambiguities in the pleadings. For example, in laying the foundation for the plea, the State made no mention of the essential elements that trigger a life sentence for child abuse resulting in death; namely, the Child's age and Defendant's intentional behavior. Trial counsel did not object to these omissions, and the trial court did not ask if the State could prove these necessary elements.

**{20}** At the same hearing, defense counsel inadvertently summed up the entire flawed process when the trial court asked if counsel had explained the benefit of the plea agreement to his client. In a statement that is the source of several issues in this appeal—and is inaccurate in more ways than one—defense counsel replied, "I've also further explained to my client that under the statute, even negligent abuse resulting in death of a child is a first degree felony . . . so even if it was an accident, [Defendant] could be found guilty and sentenced as a first degree felon."

**{21}** A final aspect of the plea hearing bears mentioning. During the trial court's colloquy with Defendant to ensure that his plea was knowing and voluntary, the court ran through the requirements of Rule 5-303(F) NMRA without a problem. However, the court failed to comply fully with the requirements of Rule 5-303(G). The court asked Defendant if his plea was voluntary, but did not inquire if Defendant's plea was the result "of promises apart from a plea agreement."[4] *Id.* The court ultimately accepted Defendant's guilty plea and sentenced

---

[4]While we do not find reversible error in the insufficient plea colloquy because of a lack of prejudice to Defendant, *see State v. Garcia*, 121 N.M. 544, 547, 915 P.2d 300, 303 (1996) (holding that "absent a showing of prejudice to the defendant's right to understand

him to life in prison.

**Defendant's Pro Se Appeal and Motion to Withdraw His Plea**

**{22}**    Acting pro se, Defendant appealed his conviction and life sentence to the Court of Appeals, arguing that his plea should be set aside because it was not knowing and voluntary due to ineffective assistance of counsel.  In a memorandum opinion, the Court dismissed his appeal for lack of jurisdiction pursuant to *State v. Smallwood*, 2007-NMSC-005, ¶ 6, 141 N.M. 178, 152 P.3d 821 (explaining that the Court of Appeals has no jurisdiction over cases in which the district court imposes "a sentence of life imprisonment or death").  The Court further noted that even if jurisdiction were proper, it would not be able to afford him relief because Defendant had appealed his case without creating a record on his ineffective assistance of counsel claim.

**{23}**    On the same day that Defendant filed his notice of appeal, he submitted to the trial court a motion to withdraw his plea for the same reasons raised in his appeal. The trial court notified Defendant that it could not consider his motion because his appeal had divested the court of jurisdiction.  After the Court of Appeals dismissed the appeal, the trial court held an evidentiary hearing to consider Defendant's motion to withdraw his plea.  Again, acting pro se, Defendant put on evidence that his plea was not knowing and voluntary.  The trial court denied the motion, and Defendant timely petitioned this Court for a writ of certiorari. We granted certiorari pursuant to Rule 12-501 NMRA and appointed appellate counsel to assist Defendant.

**DISCUSSION**

**Direct Appeal**

**{24}**    As an initial matter, we must clarify the procedural posture of this case.  As the Court of Appeals rightly noted, appeals from cases where "the district court impos[es] a sentence of death or life imprisonment" must be taken directly to this Court. N.M. Const. art. VI, § 2.  Given that Defendant was sentenced to life in prison, we agree that he should have appealed directly to this Court pursuant to Rule 12-102(A) NMRA, rather than filing a petition for certiorari.[5]  The parties note this discrepancy in their briefing, but the State does

_____

his guilty plea and its consequences, substantial compliance with Rule 5-303(E) is sufficient"), we emphasize the importance of strictly adhering to the requirements of Rule 5-303 when accepting a plea of guilty or no contest.  Scrupulously following the Rule's requirements would have foreclosed Defendant's argument that his plea was the result of promises made by defense counsel that did not appear in the plea agreement.

[5]Previously, as in *Smallwood*, 2007-NMSC-005, life sentences were the exclusive subject of first degree murder prosecutions. *See* NMSA 1978, § 30-2-1(A) (1994) (providing

not claim prejudice or seek a remedy. Thus, unless Defendant's error affects our jurisdiction, we have discretion to address the merits of his appeal.

**{25}** We explained in *Govich v. North American Systems, Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991), that although our previous case law had referred to the requirements for time and place of filing an appeal as jurisdictional, such statements were "imprecise." Instead, we held that those types of requirements are "mandatory preconditions" to appellate review and that New Mexico's appellate courts have discretion to hear an appeal, as long as "the intent to appeal a specific judgment fairly can be inferred from the notice of appeal and if the appellee is not prejudiced by any mistake." *Id.*

**{26}** We agree with Defendant that "[t]he issue that would be brought on direct appeal . . . is the same as that raised in the petition [for a writ of certiorari]—whether the trial court erred in denying [Defendant]'s motion to withdraw his plea." Defendant's petition clearly demonstrates his intent to appeal the trial court's denial of his motion to withdraw his plea. We therefore conclude that our jurisdiction is intact. While we are generally reluctant to overlook shortcomings in appellate procedure, we choose to exercise our discretion in this case and will address the merits of Defendant's appeal.

**Defendant's Plea Was Not Knowing and Voluntary**

**{27}** Defendant contends that his plea was not knowing and voluntary because he received ineffective assistance of counsel. Specifically, Defendant maintains that defense counsel's performance was deficient because (1) he misinformed Defendant that he could be convicted of negligent child abuse resulting in death "even if it was an accident," and (2) he led Defendant to believe that negligent and intentional child abuse resulting in death are both first degree felonies which carry a life sentence. The State argues that (1) Defendant did not properly preserve these issues, and that as a result, the record is insufficient to determine whether trial counsel's performance was deficient, and (2) even if defense counsel were ineffective, Defendant failed to demonstrate prejudice.

**{28}** Although we are reluctant to consider an ineffective assistance of counsel claim on appeal without an evidentiary hearing, *see State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992), we generally do not demand preservation of the issue because

---

that first degree murder is a capital felony); NMSA 1978, § 31-20A-2 (2009) (providing that the sentence for a capital felony is life imprisonment without the possibility of parole). Now that the Legislature has expanded life sentences to noncapital offenses, our direct-appeal jurisdiction under the State Constitution has expanded in a similar fashion. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court.").

effective assistance of counsel is a fundamental right,[6] *see State v. Luna*, 92 N.M. 680, 685, 594 P.2d 340, 345 (Ct. App. 1979) (allowing for review of ineffective assistance of counsel claim under the doctrine of fundamental error). Also, it seems unrealistic to expect trial counsel to have preserved the issue of his own ineffectiveness. *Cf. State v. Martinez*, 2001-NMCA-059, ¶ 26, 130 N.M. 744, 31 P.3d 1018 (acknowledging that counsel is not expected to raise against himself a claim of ineffective assistance of counsel that is based on a conflict of interest). Instead, as we explained in *State v. Roybal*,

> [w]hen an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.

2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

**{29}** Thus, depending on the adequacy of the record, we may either dismiss or remand an ineffective assistance of counsel claim to allow for further development of the issue before the trial court. In rare circumstances, however, the record may be sufficiently developed that an appellate court can rule on the issue without further inquiry by the trial court. *See, e.g.*, *State v. Hunter*, 2006-NMSC-043, ¶¶ 30-31, 140 N.M. 406, 143 P.3d 168 (ruling on an ineffective assistance of counsel claim without remanding for further evidentiary proceedings). Our review of the record leads us to conclude that this is one of those circumstances. This record is sufficiently developed for us to reach the merits of Defendant's claim.

**{30}** To state a case of ineffective assistance of counsel, Defendant must show that "(1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" *Id.* ¶ 12 (quoting *State v. Paredez*, 2004-NMSC-036, ¶ 12, 136 N.M. 533, 101 P.3d 799). Counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). We afford a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689

---

[6]We note that we also could reach Defendant's claim under the procedural strand of our fundamental error doctrine. *See State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633 (noting that fundamental error can arise where "'a fundamental unfairness within the system . . . would undermine judicial integrity if left unchecked'" (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176)); *see also State v. Bencomo*, 109 N.M. 724, 725, 790 P.2d 521, 522 (Ct. App. 1990) (reversing the denial of a motion to withdraw a guilty plea under the doctrine of fundamental error).

(internal quotation marks and citation omitted).

**{31}** We first note that the trial court in this case held an evidentiary hearing and issued a ruling denying Defendant's pro se ineffective assistance of counsel claim.[7] We agree with the State, however, that Defendant did not base his claim below on the same grounds as he does in this appeal. As a result, trial counsel has never been questioned on the record regarding the issues raised here. Nevertheless, for the reasons that follow, we find that the record on the precise issue before us is sufficiently developed to determine that trial counsel's performance was deficient.

### Negligent Child Abuse Resulting in Death Requires Proof of Criminal Negligence

**{32}** Defendant first argues that defense counsel's claim that he could be convicted "even if [the Child's death] was an accident," "fell below an objective standard of reasonableness," *Paredez*, 2004-NMSC-036, ¶ 14, because it was confusing to Defendant and was a misstatement of the law. We agree.

**{33}** We held in *Santillanes*, 115 N.M. at 222, 849 P.2d at 365, that a conviction for negligent child abuse resulting in death requires proof that the defendant's actions went beyond mere civil negligence or accidental conduct. Instead, the appropriate standard is *criminal* negligence, which requires that a person "knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3) (defining "negligently" for purposes of the child abuse statute). This is a far cry from a mere accidental death.

**{34}** Numerous opinions of this Court and the Court of Appeals demonstrate that the civil/criminal distinction in this context goes well beyond semantics. *See State v. Mascareñas*, 2000-NMSC-017, ¶¶ 15-16, 129 N.M. 230, 4 P.3d 1221 (reversing a conviction for negligent child abuse resulting in the death of a child because of the possibility that the jury convicted the defendant under a civil negligence standard); *State v. Magby*, 1998-NMSC-042, ¶ 16, 126 N.M. 361, 969 P.2d 965 (same), *overruled by Mascareñas*, 2000-NMSC-017, ¶ 25; *Santillanes*, 115 N.M. at 222, 849 P.2d at 365 (holding that the child abuse statute requires a showing of criminal negligence); *State v. Chavez*, 2007-NMCA-162, ¶¶

---

[7]Defendant argued to the trial court at the hearing on his motion to withdraw his plea that his plea was not knowing and voluntary because defense counsel promised that he would receive only two years of probation and no prison time if he pleaded guilty to intentional child abuse resulting in death. Furthermore, Defendant argued that if the trial court had fully complied with Rule 5-303(G) and inquired whether his plea was the result of "promises apart from a plea agreement," he would have informed the court of defense counsel's promise. The trial court denied the motion, reasoning that it had substantially complied with Rule 5-303 by repeatedly informing Defendant at his plea hearing that he would receive a mandatory sentence of 30 years in prison as a result of pleading guilty.

10

18-22, 143 N.M. 126, 173 P.3d 48 (discussing development of the criminal negligence standard in cases involving negligent child abuse); *cf. Schoonmaker*, 2008-NMSC-010, ¶¶ 42-45 (discussing criminal negligence standard required by child abuse statute).

**{35}** Consequently, defense counsel's colloquial use of the term "accident" to describe a crime that requires proof of criminal negligence was erroneous, a clear misstatement of the law. ("[S]o even if it was an accident, [Defendant] could be found guilty and sentenced as a first degree felon.") Our cases plainly demonstrate the importance of this distinction. Indeed, we have twice reversed convictions because of the *possibility* that the juries were not properly instructed on this issue and, thus, could have based their guilty verdicts on the civil negligence standard. *See Magby*, 1998-NMSC-042,¶ 16; *Santillanes*, 115 N.M. at 222, 849 P.2d at 365. If a jury must be carefully instructed on the criminal negligence standard to return a proper verdict, surely Defendant has the same right before entering into a plea agreement. Defense counsel's remark ran a serious risk of misleading his client about his chances of conviction and, thus, fell below an objective standard of reasonableness.

*Competent Criminal Representation Requires Knowledge and Understanding of the Potential Crimes and Sentences a Client Faces*

**{36}** Defendant also argues that his counsel's failure to inform him of the difference in sentences between intentional and negligent child abuse resulting in death amounted to deficient performance. As evidence of counsel's omission, Defendant points to the same statement by trial counsel at the plea hearing, where he openly admitted that he had advised Defendant that "even negligent abuse resulting in death of a child is a first degree felony" and that "even if [the Child's death] was an accident, [Defendant] could be found guilty and sentenced as a first degree felon." Defendant argues that these statements led him reasonably to believe that "a first degree felony results in a 30-year sentence," which is manifestly wrong, and that both negligent and intentional child abuse resulting in death are equivalent first degree felonies, which is also erroneous when the Child is a young child.

**{37}** We acknowledge, as both Defendant and the State point out, that trial counsel's statement was "technically correct"—but only if taken wholly out of context. Negligent child abuse resulting in death *is* a first degree felony. *See* § 30-6-1(F). However, as explained earlier in this Opinion, every reference in the record to intentional child abuse resulting in death also described *that* offense as a "first degree felony." Furthermore, the plea agreement stated that a first degree felony carries a 30-year sentence, which it does not. The trial judge also incorrectly instructed Defendant that a first degree felony carries a 30-year sentence. Consequently, we agree with Defendant that the implication of his counsel's statement is clear: Defendant was advised that he would receive a 30-year sentence whether the jury found that he acted intentionally or negligently, which is manifestly false.[8]

---

[8]If there were any doubt concerning the meaning of defense counsel's statement, the prosecutor made it clear at the hearing on Defendant's motion to withdraw his plea. Arguing

11

**{38}** Although Defendant does not raise the issue, we find further fault with his counsel's statement. As we explained earlier in this opinion, the pleadings are inconsistent as to whether Defendant was charged with intentional *and* negligent child abuse resulting in death, or only with the former. However, the procedure was quite clear. At the initial stage, Defendant pleaded not guilty to intentional child abuse resulting in death, with no mention of a negligence charge; the State did not amend the criminal information to include a negligence charge; Defendant did not receive or waive a probable cause determination for a negligence charge; and the plea agreement makes no mention that the State was dropping a negligence charge in exchange for Defendant's guilty plea.

**{39}** Defense counsel's statement—that "even if [the Child's death] was an accident, [Defendant] could be found guilty and sentenced as a first degree felon"—therefore, assumed too much. Had the case proceeded to trial, counsel would have had a seemingly winning argument that his client had never been charged with *negligent* child abuse resulting in death. The result would have been to provide Defendant with a complete defense; he would have been acquitted if the jury found that he acted negligently and not intentionally.

**{40}** We cannot conceive of a strategic reason for either aspect of defense counsel's erroneous advice to his client. We are led to believe that counsel simply was unaware of the 2005 amendments to the child abuse statute and sentencing guidelines, and of case law holding that negligent and intentional child abuse are separate offenses. As we said in *In re Neal*, "[n]o lawyer should approach any task without knowledge of the applicable statutes, court rules, and case law . . . ." 2001-NMSC-007, ¶ 21, 130 N.M. 139, 20 P.3d 121 (per curiam). It is of little comfort that both the prosecution and the trial court appear to have labored under a similar misapprehension of the law.

**The Deficient Performance Prejudiced Defendant**

**{41}** We turn now to examine whether defense counsel's deficient performance caused Defendant prejudice. To show prejudice, we look to the record to determine whether "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 28, 130 N.M. 179, 21 P.3d 1032 (quoting *State v. Brazeal*, 109 N.M. 752, 757-58, 790 P.2d 1033,

---

that Defendant knew he would receive a 30-year sentence, the State explained,

> [Defendant's attorney] even stated to the Court [at the plea hearing that] he had discussed the plea agreement in detail with his client and had informed him even if we went to trial that in his opinion that, *if it was found to have been an accident, he still could have been convicted of the first degree child abuse, resulting in a 30-year sentence*.

(Emphasis added.)

1038-39 (Ct. App. 1990)).  In this context, a reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'"  *Id.* (quoting *Brazeal*, 109 N.M. at 758, 790 P.2d at 1039).

**{42}**    In our prior cases, we have demanded more than "the self-serving statements of defendants" to prove prejudice.  *Id.* ¶ 29.  Instead, we look to whether there is a reasonable probability that the accused would have chosen to go to trial rather than pleading guilty if he had received adequate representation.  *Id.* ¶ 28.  In making that determination, we have considered (1) "the strength of the State's evidence, reasoning that a defendant may be more likely to plead guilty if the evidence against him is strong," *Hunter*, 2006-NMSC-043, ¶ 26 (citing *Patterson*, 2001-NMSC-013, ¶ 31),  and (2) "'pre-conviction statements or actions [that] may indicate whether [the defendant] was disposed to plead or go to trial.'"  *Id*.

**{43}**    With respect to the evidence against Defendant, we conclude that a conviction of *intentional* child abuse resulting in death was by no means a foregone conclusion. We note that the inquiry is not whether the evidence shows that Defendant would have prevailed at trial; rather, we look to whether there is a reasonable probability that, given the State's evidence against him, Defendant would have chosen to go to trial had he received adequate advice.  *See Patterson,* 2001-NMSC-013, ¶ 31.  In previous cases, we have noted "a direct relationship between the strength of the case against a defendant and the likelihood that he or she will plead guilty or no contest. As the strength of the evidence increases, so does the likelihood that a defendant will accept a plea offer instead of going to trial."  *Id.*

**{44}**    At the plea hearing, the State claimed that it could prove the following at trial:

> Your honor, the State would show that on or about April 13th and April 14th of 2007, here in San Juan County, New Mexico, that the defendant was helping his girlfriend . . . babysit [the Child], and during the evening of that—, when he was babysitting her, he took her into a separate room and actually stomped on her abdomen with such force that he left his shoe impression on her abdomen, and we actually believe there was actually two shoe impressions that were left behind.  We would have had somebody from the state lab to come down and testify that the left foot, the left shoe of the Defendant's could not be a source of the impression but that the right shoe would, could not be eliminated as a source of the impression that was left on her abdomen.
>     During the same abuse, she also suffered multiple head injuries, blunt-force trauma to her head, and OMI would testify there were numerous bruises and that actually either injury could have ultimately caused her death. She was basically slipped into a coma and was left in a coma for several hours until she passed away in her sleep and was discovered by [Defendant's girlfriend] sometime in the middle of the morning, no longer breathing.  And at that time, they rushed her to a neighbor to call 911, and by that time, it was too late.  There was no way they could resuscitate her at that point.

13

**{45}**     Despite this physical evidence proving that Defendant was the *cause* of the shoe impression on the Child's abdomen, the matter of intent was left far less clear. Defendant's only statement to police, that he "guessed" he could have stepped on the Child's abdomen when he jumped over her, is at least as consistent with negligent, or even accidental, conduct as it is with an intentional act. Furthermore, there were no eyewitnesses, and Defendant's girlfriend told law enforcement that she did not know how the injuries occurred. She also stated that Defendant had helped her take care of the children before and that he had never hurt them. Additionally, Defendant claimed that his girlfriend had shoes that were identical to his, which would have left the same type of impressions on the Child.[9]

**{46}**     Without clear evidence of *intentional* child abuse, we conclude that, had Defendant been properly advised by defense counsel, there was a reasonable probability that he would have chosen to go to trial rather than plead guilty to the maximum charge of *intentional* child abuse resulting in death—and its mandatory life sentence—as opposed to negligent child abuse and an 18-year sentence. *Cf. United States v. Gigot*, 147 F.3d 1193, 1199 (10th Cir. 1998) ("It is more than possible that [the defendant] might have chosen to take her chances with a jury trial had she thought the worst-case scenario was a five-year prison sentence and a $250,000 fine rather than the thirty years of confinement and $1 million fine she mistakenly believed she faced."). At the very least, we find a reasonable probability that Defendant would have continued to maintain his innocence at trial, rather than pleading guilty to *this* crime, a crime carrying a life sentence.[10]

**{47}**     Defendant may have been prejudiced in still another way. Defense counsel's statements and actions demonstrate that he may have believed that a 30-year sentence could be the only result in this case—regardless of whether Defendant acted intentionally, with criminal negligence, or with no culpability at all. As a result, defense counsel appeared to

---

[9]Defendant gave this testimony at the hearing on his motion to withdraw his guilty plea. He alleged that defense counsel failed to investigate this information as a possible defense. Furthermore, unless the State could prove that the head trauma and the abdominal injuries occurred at the same time, Defendant had a potential causation argument as well. If someone else caused the head injuries, it may have been impossible to determine whether his alleged actions caused the Child's death. The State did not offer any proof that Defendant caused the head injuries.

[10]Had Defendant been convicted of intentional child abuse resulting in death and the other two charges he faced, he could have been sentenced to a *minimum* of life plus six years. However, had he been convicted of negligent child abuse resulting in death, he faced a *maximum* of 24 years (18 years for the first degree felony and three years each for the tampering and battery charges). Additionally, had defense counsel successfully argued that Defendant was never charged with negligent child abuse resulting in death, Defendant potentially faced a maximum of only six years imprisonment, assuming the jury found that he did not intentionally abuse the Child.

be unprepared to competently negotiate a plea agreement on Defendant's behalf. Thus, if true, he may have lacked the incentive and knowledge to bargain with the State for a lower sentence based on Defendant's mental state. This may have led defense counsel to advise Defendant to agree to a plea agreement that resulted in a minimum of 30 years in prison—notwithstanding the fact that even if Defendant had been convicted of negligent child abuse resulting in death *and* the battery and tampering charges, he would have received only 24 years.

**{48}** The State also argues that Defendant cannot show prejudice in this appeal because of the position that he took in his motion to the trial court to withdraw his plea. There, Defendant claimed that he had agreed to plead guilty because his counsel promised him that he would be sentenced to only two years of probation without prison time. The State therefore contends that "[Defendant] seemed to argue that he would have pleaded guilty to any charge contained in the plea agreement because he was relying on his counsel's advice that no matter what the plea agreement stated, he was going to get probation." According to the State, Defendant would have pleaded guilty, regardless of the erroneous information provided by defense counsel raised in this appeal, based on his erroneous understanding that he would be sentenced only to probation.

**{49}** We acknowledge that Defendant's two positions may be inconsistent; however, the root of our inquiry is whether Defendant's decision to enter into his plea agreement was *knowing* and voluntary. Thus, even if Defendant would have pleaded guilty regardless of the terms of the plea agreement, he still had a right to be accurately informed of the charges against him and the possible sentences that he faced. He had the right to make an *informed* choice. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."); Rule 5-301(D)(1), (2) NMRA (providing that at the first appearance, the court shall inform the defendant of the offense charged and the penalty provided by law).

**{50}** We therefore conclude that Defendant has met his burden in establishing a prima facie claim of ineffective assistance of counsel. Furthermore, this case presents the rare circumstance where we will allow Defendant to withdraw his plea without further proceedings. While the record does not contain any testimony from defense counsel, we are more than persuaded that Defendant's plea was not knowing or voluntary based on the totality of the circumstances established by the record.

**{51}** Although we decide this appeal under the framework of ineffective assistance of counsel, we note that defense counsel was not solely to blame for the proceedings below. Indeed, the original source of confusion in this case was the State's ambiguous charge of child abuse resulting in death. No one—not the prosecutor, defense counsel, or the trial court itself—seemed to be aware of the subsequent procedural errors that effectively undermined Defendant's ability to enter a knowing and voluntary guilty plea. Neither the State nor the court clarified for Defendant that intentional and negligent child abuse resulting in death are *not* both "first degree felonies," and that, in fact, they are entirely distinct crimes

15

that carry dramatically different sentences. Similarly, neither the State nor the court corrected defense counsel that Defendant could not be convicted of negligent child abuse resulting in death because he had never been charged with that crime.[11]

**Defendant's Remaining Arguments**

{52} Defendant makes numerous other arguments in support of his claim that he should be allowed to withdraw his plea. Because we grant Defendant the relief that he seeks on the grounds stated above, we do not reach his remaining issues.

**CONCLUSION**

{53} We reverse the trial court and remand for proceedings consistent with this Opinion.

{54} **IT IS SO ORDERED.**

_____
      **RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____

[11]Perhaps the clearest sign that should have indicated to the attorneys and the trial court that something was awry was the sentencing language in the plea agreement: "A 1st degree felony carries a maximum penalty of 30 years in the DOC, plus or minus 5 years parole." This is simply a misstatement of the law. *No* level of offense carries a maximum penalty of 30 years in prison. A first degree felony carries a maximum sentence of 18 years; a first degree felony resulting in the death of a child carries a life sentence, which we have construed as a *minimum* of 30 years in prison. *See Compton*, 2003-NMSC-031, ¶ 28 (holding that an individual sentenced to life in prison must serve a minimum of 30 years before being eligible for probation or parole); *see also* NMSA 1978, § 31-21-10(A) (2009) ("An inmate of an institution who was sentenced to life imprisonment becomes eligible for a parole hearing after the inmate has served thirty years of the sentence."). Thus, no judge in New Mexico can impose on an adult "a maximum penalty of 30 years in prison" for a single offense.

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *Garcia v. State*, Docket No. 31,328**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-DA | Dismissal of Appeal |
| AE-FE | Fundamental Error |
| AE-NA | Notice of Appeal |
| AE-PJ | Prejudicial Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-RM | Remand |
| AE-RT | Right to Appeal |
| | |
| **AT** | **ATTORNEYS** |
| AT-EA | Effective Assistance of Counsel |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| CL-CM | Criminal Negligence |
| CL-EL | Elements of Offense |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-EA | Effective Assistance of Counsel |
| CA-EO | Elements of Offense |
| CA-GP | Guilty Plea |
| CA-IF | Information |
| CA-LO | Lesser Included Offense |
| CA-PJ | Prejudice |
| | |
| **JD** | **JURISDICTION** |
| JD-AJ | Appellate Jurisdiction |
| JD-SC | Supreme Court |