This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40854**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAMES HENRY ACKERMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Daniel A. Bryant, District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant James Ackerman was convicted, following a jury trial of three offenses: (1) one count of residential burglary, contrary to NMSA 1978, Section 30-16-3(A) (1971); (2) one count of stalking, contrary to NMSA 1978, Section 30-3A-3 (2009); and (3) one count of interference with communications, contrary to NMSA 1978, Section 30-12-1 (1979). Defendant raises the following issues on appeal: (1) the district court erred in summarily denying Defendant's motion to dismiss for violation of his right to a speedy trial based on untimeliness; (2) alternatively, defense counsel's late-filing of

Defendant's speedy trial motion establishes a prima facie case of ineffective assistance of counsel; and (3) the evidence was insufficient to support Defendant's conviction for residential burglary. We affirm.

**DISCUSSION**

**{2}** We first address Defendant's claims related to his motion to dismiss for violation of his right to a speedy trial, which his counsel filed on the morning of trial. Defendant claims that the district court was required to consider the motion on its merits and was not authorized to summarily deny it and proceed to trial. In the alternative, Defendant claims that defense counsel's failure to file the motion to dismiss earlier is prima facie ineffective assistance of counsel requiring remand for hearing in the district court.

**{3}** After addressing Defendant's alternative arguments relating to his speedy trial motion, we address the sufficiency of the evidence to support Defendant's conviction for residential burglary. As to this contention, Defendant claims that the evidence at trial did not support the jury's finding that he entered Victim's home with the required intent to commit any of the three felonies on which the jury was instructed: aggravated battery, murder, or false imprisonment.

**I.    Defendant Failed to Preserve His Argument That the District Court Lacked Authority to Summarily Deny His Motion to Dismiss for Violation of His Right to a Speedy Trial**

**{4}** Defendant relies on this Court's decision in *State v. Candelaria*, 2019-NMCA-032, 446 P.3d 1205, to claim on appeal that, because there was neither a rule nor a scheduling order setting a deadline for filing a speedy trial motion, the district court was not authorized to deny Defendant's motion as untimely. The State argues in response that Defendant did not preserve this claim and affirmatively waived it when he refused the district court's offer to continue the trial, which would have given the court the opportunity to decide Defendant's speedy trial motion. We agree with the State and explain.

**{5}** Before the start of trial, defense counsel informed the district court that he had filed a motion to dismiss on speedy trial grounds that morning. Counsel explained that he had promised Defendant several months earlier that he would file such a motion. He acknowledged his responsibility for the late-filing, stating that he had forgotten until the night before trial, when he quickly drafted and filed the motion. Not surprisingly, neither the State nor the district court had reviewed the motion.[1] Defense counsel admitted that he "anticipate[d] it would be denied as untimely filed." The district court declined to hear the motion explaining that it was "untimely filed and in a circumstance that makes it impossible for the court to conduct a hearing on it prior to the start of trial."

---

[1] This denial was memorialized in a written order finding that the motion "was untimely," "had not yet been uploaded into the Odyssey system," and "[t]he State . . . did not have the [m]otion, and had no opportunity to review the [m]otion prior to beginning the hearing at 8:30 a.m."

**{6}**     Defendant did not object to the court's ruling and did not argue, as he now does on appeal, that the district court was not authorized to summarily deny the motion based on untimeliness absent the violation by counsel of a scheduling order or rule setting a date for the filing of a speedy trial motion. Defense counsel acknowledged on the record that he had been ineffective in failing to timely file the speedy trial motion. Defense counsel stated that Defendant would "like to preserve the record for an ineffective assistance of counsel claim regarding the untimely filing of that motion."

**{7}**     The remainder of the hearing focused on potential grounds for a claim of ineffective assistance of counsel. Defendant directly addressed the court about defense counsel's failure to timely file the motion to dismiss for violation of his right to a speedy trial. Defendant then raised other conduct by defense counsel he claimed amounted to ineffective assistance. He complained about defense counsel's failure to be available for scheduled telephone appointments, to interview witnesses suggested by Defendant, and alleged that defense counsel had a conflict of interest based on the sister of one of the arresting officers working in defense counsel's office. The district court ruled that there was not sufficient evidence for the court to address the claims of ineffective assistance of counsel, and that the court would proceed with the trial. At the conclusion of an additional statement to the court by Defendant on ineffective assistance of counsel, the court then asked whether defense counsel had anything further. After a long pause, audible on the record, where defense counsel spoke privately with Defendant, defense counsel stated, "There was some discussion just right now about asking for a continuance to resolve [Defendant's concerns about ineffective assistance of counsel], but [Defendant] would rather just do the trial today." The court then proceeded with the trial.

**{8}**     "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the [district] court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). The record shows that defense counsel never argued that it was error for the district court to summarily deny Defendant's speedy trial motion and therefore never obtained a ruling on that question. Indeed, defense counsel—acknowledging that his conduct made it impossible for the court to consider the motion before trial—never mentioned court rules, scheduling orders, or *Candelaria*. Nor did defense counsel ask the district court to continue the trial so that the speedy trial motion could be resolved. We therefore will not consider Defendant's claim on appeal that the court lacked authority to summarily deny the motion to dismiss and proceed to trial.

**{9}**     We also decline Defendant's request to review the merits of his speedy trial motion. "Because there were no district court proceedings to fully develop the facts, and the district court had no opportunity to make findings, the record is not adequate to allow appellate review." *State v. Dirickson*, 2024-NMCA-038, ¶ 30, 547 P.3d 781.

## II.     Defendant Has Not Established a Prima Facie Case of Ineffective Assistance of Counsel

**{10}** Defendant next argues that counsel's filing of his speedy trial motion on the morning of trial establishes a prima facie case of ineffective assistance of counsel, requiring this Court to remand to the district court for the taking of evidence. *See State v. Swavola*, 1992-NMCA-089, ¶ 3, 114 N.M. 472, 840 P.2d 1238 (holding that this Court will remand for hearing if the record establishes a prima facie case of ineffective assistance of counsel). A prima facie case of ineffective assistance of counsel requires the defendant to show that "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134.

**{11}** Even assuming that counsel's delay in filing the speedy trial motion fell below the performance of a reasonably competent attorney, and that the delay was not a trial tactic, the grounds identified in the motion do not, standing alone, establish prejudice to Defendant. Without a hearing by the district court ruling both on the reasons for the delay and hearing evidence on the particularized prejudice Defendant suffered, there is no basis for this Court to determine whether there was merit to Defendant's speedy trial claim. "To show prejudice, we look to the record to determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Garcia v. State*, 2010-NMSC-023, ¶ 41, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted). The record here does not establish a reasonable probability that the result would have been different had the speedy trial motion been timely filed.

**{12}** When a prima facie case of ineffective assistance of counsel is not apparent from the record, "[o]ur Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal." *State v. Cordova*, 2014-NMCA-081, ¶ 7, 331 P.3d 980. Defendant may still pursue this claim through a habeas corpus proceeding should he believe a factual basis exists for such a claim.

### III. The Evidence Is Sufficient to Support the Jury's Finding That Defendant Entered Victim's Home With the Intent to Commit a Felony

**{13}** Lastly, Defendant argues that the evidence was insufficient to support the jury's finding that he had the intent required to be convicted of residential burglary. The jury was instructed that it was required to find that Defendant entered Victim's home with the intent to commit one of the following felonies: aggravated battery, murder, or false imprisonment. Defendant claims: (1) he did not commit any overt acts once he entered Victim's home, and (2) the evidence of his conduct prior to April 16, 2020, did not reflect intent to cause harm, but rather his wish for companionship and reconciliation with Victim. We conclude that the evidence in the record supports the jury's verdict.

### A. Relevant Evidence in the Record

**{14}** Defendant, over a period of more than a year, repeatedly entered Victim's home in the remote mountain community of Timberon, New Mexico, without Victim's permission. Victim testified that her first negative encounter with Defendant occurred in May 2019 after she had told him to stop coming to her house without calling. Defendant came to her front door at 2:00 a.m., and kicked the door open as Victim tried to shut it. Defendant grabbed Victim around her rib cage and pressed until she almost blacked out. Defendant did this repeatedly, and did not leave Victim's house until the next day.

**{15}** Even though Victim reported to law enforcement later incidents of Defendant entering her home without permission, obtained a no-trespass order and a temporary restraining order, Defendant's intrusions escalated in frequency, sometimes occurring multiple times in a single day. Defendant threatened four or five times to kill Victim. He also destroyed her landline telephone four or five times when she tried to call law enforcement. Victim took significant protective measures, including staying at friends' houses, sleeping in a recliner, purchasing night-vision goggles, purchasing a gun upon law enforcement's suggestion, and installing a steel security door. None of these measures stopped Defendant from trespassing. Defendant was ultimately arrested by two deputy sheriffs at Victim's house, and convicted of criminal trespass on March 4, 2020.

**{16}** On April 16, 2020, slightly over a month after Defendant's trespassing conviction, the events forming the basis of Defendant's residential burglary conviction occurred. Defendant came to Victim's house at 6:30 a.m., yelling "open this door, you stupid bitch" and banged repeatedly on her security door while Victim was sleeping in her recliner in the living room. When Victim told Defendant to leave, he walked around her house, picked up Victim's metal three-foot long pruning lopers from her shed, and cut the telephone line. Defendant then found a window in her bedroom with a broken lock, and entered her house through that window. Victim described Defendant as looking "like he was going to do bloody murder to [her]." When Defendant kept coming toward Victim after she told him she had a gun and would shoot him, she shot three times and wounded Defendant with the third shot. Only then did he stop.

## B.    Standard of Review

**{17}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

## C.    Reasonable Inferences from the Evidence Support the Jury's Finding of Intent to Commit a Felony

**{18}**   Consistent with Section 30-16-3(A), defining the crime of residential burglary, and UJI 14-1630 NMRA, the jury was instructed that in order to convict Defendant of residential burglary, it had to find, beyond a reasonable doubt, each of the following elements: "(1) [D]efendant entered a dwelling without authorization; (2) [D]efendant entered the dwelling with the intent to commit aggravated battery, false imprisonment[,] or murder when inside; and (3) This happened in New Mexico on or about the 16th day of April, 2020." The court also instructed the jury on the elements of aggravated battery, false imprisonment, and murder, while noting that Defendant was not charged with any of these crimes.

**{19}**   "Burglary is a specific intent crime. It requires an unauthorized entry with the intent to commit any felony or theft therein." *State v. Jennings*, 1984-NMCA-051, ¶ 14, 102 N.M. 89, 691 P.2d 882. "Intent to injure need not be established by direct evidence but may be inferred from conduct and the surrounding circumstances." *State v. Valles*, 1972-NMCA-076, ¶ 4, 84 N.M. 1, 498 P.2d 693; *see State v. Hixon*, 2023-NMCA-048, ¶ 47, 534 P.3d 235 ("Intent is usually established by circumstantial evidence." (text only) (citation omitted)).

**{20}**   In this case, there was no claim that Defendant entered Victim's house in order to commit a theft. As previously described, the jury was instructed to determine whether Defendant entered Victim's house with the intent either to injure her (to commit aggravated battery), to murder her, or to falsely imprison her. Evidence supporting a reasonable inference that Defendant intended to commit any one of these three felony crimes is sufficient to support Defendant's conviction for burglary. "If there are reasonable inferences and sufficient direct or circumstantial facts, then the issue of intent is determinable by the jury and will not be reweighed by the reviewing court." *State v. Lucero*, 1982-NMCA-102, ¶ 6, 98 N.M. 311, 648 P.2d 350. Contrary to Defendant's argument that the State was required to prove an overt act—that he took a step toward commission of one of the identified felony crimes after he entered Victim's house—we have held that "[p]roof of intent at the time of entry does not depend upon the subsequent commission of the felony, failure to commit the felony or even an attempt to commit it." *State v. Castro*, 1979-NMCA-023, ¶ 13, 92 N.M. 585, 592 P.2d 185, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, 98 N.M. 786, 653 P.2d 162.

**{21}**   Although Defendant claims he only wanted "companionship and reconciliation" with Victim, there was substantial evidence supporting the determination by the jury that Defendant entered with the intent to seriously injure or kill Victim or to confine her against her will. The facts recited above, regarding Defendant's actions not just on April 16, 2020, but during prior unauthorized entries into Victim's home, provide sufficient evidence from which a jury could conclude that Defendant entered her home with the intent to commit one of the identified felonies. The evidence established that Defendant: (1) grabbed Victim around her ribs and repeatedly squeezed until she nearly passed out during a previous entry; (2) threatened that if Victim called law enforcement, he would kill her; (3) had been convicted of criminal trespass just a month prior; (4) picked up a pair of large pruning lopers, clearly capable of causing severe bodily harm; and (5)

destroyed Victim's telephone numerous times, and cut Victim's telephone line before entering her house on the day in issue, making it impossible for her to call law enforcement. This evidence creates a reasonable inference that Defendant intended either to seriously harm or murder Victim, or at a minimum, to confine or restrain her, and prevent her from summoning help. *See State v. Corneau*, 1989-NMCA-040, ¶ 12, 109 N.M. 81, 781 P.2d 1159 (defining false imprisonment). Proof of actual commission of a crime is not required. *See Castro*, 1979-NMCA-023, ¶ 13.

**{22}** Even if there is evidence in the record that might support Defendant's claim that he lacked the intent to harm or imprison Victim, we defer to the jury's finding of guilt. *See State v. Schaaf*, 2013-NMCA-082, ¶ 11, 308 P.3d 160 (explaining that in reviewing sufficiency of the evidence on appeal, we do not consider whether the evidence would have supported a different result).

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm.

**{24}  IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**GERALD E. BACA, Judge**