This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                   **No. A-1-CA-35443**

**DANIEL TARANGO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Christin K. Kennedy
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Defendant Daniel Tarango appeals the district court's denial of his motion to withdraw and vacate his guilty plea. Defendant argues that he was denied effective assistance of counsel when he entered a guilty plea for possession of a controlled substance because his defense counsel failed to advise him of the specific immigration consequences of pleading guilty. Unpersuaded, we affirm the district court.

## I.     BACKGROUND

{2}     On July 6, 1996, Defendant was stopped for a vehicle registration violation. After failing to provide identification and giving a false name during the stop, Defendant was arrested for concealing his identity. During a search of Defendant's person, the arresting officer found a substance he believed was methamphetamine, but later tested positive as cocaine and a small amount of marijuana. Defendant was ultimately charged with possession of cocaine, possession of an ounce or less of marijuana, concealing identity, driving with a suspended or revoked license, and failing to exhibit evidence of vehicle registration. On June 17, 1997, the State filed a supplemental information alleging that Defendant was convicted of possession of a controlled substance in 1992. Because of this prior felony, the State requested a one-year habitual offender sentence enhancement in the event of a conviction. On the same day, Defendant pled guilty to possession of a controlled substance (cocaine), and in exchange for his plea the State agreed to dismiss the remaining four counts.

{3}    At the change of plea hearing, the district court realized that there was no interpreter present. Defendant's counsel suggested that Carmen Baca (Baca), who had served as an interpreter for Defendant in prior proceedings and was available, interpret for Defendant.[1] Defense counsel added that Defendant "knows [Baca] and trust[s] her." The district court stated that if Defendant states on the record that he is okay with Baca translating for Defendant, then the court will grant the request. The district court placed Baca under oath and asked to swear or affirm that she would interpret English to Spanish and Spanish to English to the best of her ability, whether she conversed with Defendant and that she understood him and he understood her. Baca replied in the affirmative. The district court asked Defendant whether he understood Baca and if he wished to have her interpret for him, to which he responded in the affirmative.

{4}    Prior to the district court conducting its colloquy, the State informed the court of the supplemental information regarding Defendant's prior conviction. The district court asked Defendant if he was Daniel Tarango who read and signed the plea and disposition agreement and guilty plea proceeding document. Defendant replied, "yes," to both questions. The district court then asked Defendant whether he (1) had an

---

[1]Defendant argued in his brief in chief that Baca was not a certified court interpreter. Beyond this, he never developed his argument. We therefore do not address the matter. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

3

adequate opportunity to go over the plea with his attorney and did his attorney explain it to him, and (2) if he felt like he understood what he was doing, and Defendant replied, "yes" to both questions. The district court asked Defendant to tell the court, in his own words, what the agreement was. There was some discussion about where Defendant would serve his time, and the district court let Defendant know that there was no guarantee, based on his plea where he would serve his time, and asked if he understood, to which he replied, "yes." The district court asked Defendant if he understood that under this plea he could be doing two and one-half years in the state penitentiary and Defendant stated that he understood. The district court continued to ask Defendant if he understood that by entering into this plea and the court accepts the plea, there would be no trial by jury and Defendant stated that he understood. The district court then asked Defendant if he was giving up his right to confront witnesses, which the court described to Defendant, meant the witnesses would testify in front of Defendant and he would get to cross-examine the witnesses, and that he is also giving up his right to remain silent, and Defendant responded, "yes." The district court asked Defendant if he wished to give up those rights and enter the plea, and Defendant responded, "yes." The district court asked Defendant if he understood that if he entered this guilty plea these rights would be waived, and Defendant stated that he understood. The court further stated that there would be no trial because he would

4

already be considered guilty. In its inquiry into the factual basis of Defendant's guilty plea, the district court asked Defendant whether he had possession of cocaine on July 6, 1996, whether he knew that it was cocaine and that it was illegal. Defendant replied, "yes" to all three questions. The district court then asked Defendant whether anyone was forcing or threatening him to enter into this plea, whether he had been promised anything in exchange for the plea that was not included in the plea agreement, Defendant responded, "no."

{5}    The district court then asked defense counsel whether he had made an independent investigation as to whether a factual basis existed for the plea. Defendant's attorney replied that there was a factual basis and he even had the substance independently tested. In response to the district court's inquiry into Defendant's immigration status, Defense counsel stated that, as far as he knew Defendant was a legal immigrant. The court noted that the plea may or may not affect his immigration status. The district court specifically found the plea had been entered into knowingly and voluntarily. By the court accepting the plea, Defendant was adjudicated as guilty of possession of a controlled substance. The district court then addressed the supplemental information that Defendant was convicted of possession of a controlled substance in Lea County in March 1992. Defense counsel stated that he had also investigated this allegation and determined that it was accurate and his

5

client would admit the prior conviction. The district court accepted the admission of the prior conviction. The district court delayed sentencing so that a pre-sentence report could be prepared and scheduled sentencing for July 22, 1997. On July 10, 1997, Defendant was deported. As a result, he failed to appear for sentencing. At some point, Defendant returned to Farmington to get his family. On June 25, 1998, the family held a garage sale where Defendant's neighbor, a police officer, saw him and called law enforcement. Defendant was eventually arrested.

{6} At the July 2, 1998 sentencing, the district court noted on the record that because Defendant would be deported, it proposed to impose the sentence recommended in the plea agreement. Defense counsel requested to use Baca as Defendant's interpreter again. The court asked if Defendant understood the interpreter and whether Baca understood Defendant. They both replied, "yes." The court then placed Baca under oath and asked her to swear or affirm that she would translate English to Spanish and Spanish to English to the best of her ability, which she stated that she would. The court announced that it was proposing a sentence as outlined in the plea agreement—one year in the penitentiary for the underlying habitual offender enchancement and Defendant would then be on unsupervised probation for eighteen months, because the court assumed he would be deported. At that point, Defendant asked to speak. Defendant, through Baca, told the district court that "he came [to

6

Farmington] for his family and now all he wants to do is return back to Mexico" with his family. The district court explained that the habitual offender enhancement was mandatory and it was therefore required to impose a one year prison sentence. Defendant stated that he understood. Defendant was sentenced, pursuant to the guilty plea, to two and one-half years in the department of corrections. Eighteen months of the sentence were suspended in favor of unsupervised probation, leaving the mandatory habitual offender enhancement of one year of incarceration followed by one year of parole to run concurrent with the unsupervised probation.

{7}     Seventeen years later, Defendant filed a motion to withdraw and vacate his guilty plea. In his motion, Defendant stated that he was in the process of applying to become a legal permanent resident. Defendant also alleged that his attorney in 1997 never told him that by pleading guilty to one count of possession of a controlled substance it would affect his immigration status, his ability to apply for legal permanent residence, or that he would be deported. Defendant further claimed that because a drug conviction is a crime of moral turpitude that makes him ineligible for legal permanent residency in general.

{8}     The motion's hearing was initially scheduled for November 6, 2015, but was rescheduled because Defendant was in federal custody. At that setting, Defendant's unopposed request to admit his plea attorney's affidavit as Defendant's Exhibit A, was

granted by the district court.[2] The motion's hearing was eventually held on December 1, 2015. Defendant was the only witness to testify at the hearing. He testified that his attorney did not speak Spanish and only spoke with Defendant when he was in court. He also testified that his attorney never advised him that accepting a plea would affect his immigration status, that he would lose his residency and that he would be deported. Defendant further testified that his attorney did not inform him that he had the right to a jury trial and had he known a plea would affect his immigration status, he would have asked for a trial. Finding Defendant's testimony as self-serving and that defense counsel did not provide ineffective assistance for purposes of the plea, the district court denied Defendant's motion to have his plea withdrawn and vacated. The district court entered findings of fact and conclusions of law. Defendant appeals the district court's denial.

## II.      DISCUSSION

{9}      Defendant claims that the district court abused its discretion in denying his motion to withdraw and vacate his guilty plea because his plea counsel failed to advise

---

[2]We caution Defendant's appellate counsel to abide by the rules of appellate procedure. The proposed affidavit should have been designated as an exhibit for the appellate record and not attached to the brief in chief. *See* Rule 12-212(A) NMRA (requiring appellant to designate exhibits); Rule 12-213(F)(4) NMRA (current version at Rule 12-318 NMRA, effective Dec. 31, 2016) (prohibiting attachments to briefs). Because there is no objection from the State and because the district court relied on the affidavit in its ruling on Defendant's motion, we will consider it.

8

him of specific immigration consequences, as required by *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, and his right to a jury trial, therefore his plea was unknowing and involuntary. We review a motion to withdraw and vacate a guilty plea based on a claim of ineffective assistance of counsel, under a mixed standard of review. *See State v. Gutierrez*, 2016-NMCA-077, ¶ 33, 380 P.3d 872. This Court "view[s] the factual record in the light most favorable to the [district] court's ruling but deciding de novo whether counsel was ineffective as a matter of law." *Id.* We therefore defer to the district court's findings of fact if they are supported by substantial evidence in the record. *See State v. Barrera*, 2001-NMSC-014, ¶ 12, 130 N.M. 227, 22 P.3d 1177 (noting that the appellate court "resolves all disputed facts and draws all reasonable inferences in favor of the [prevailing] party and disregards all evidence and inferences to the contrary, viewing the evidence in the light most favorable to the [district] court's decision"). It is Defendant's burden to provide sufficient evidence to demonstrate that his plea should be withdrawn. *See State v. Clark*, 1989-NMSC-010, ¶ 9, 108 N.M. 288, 772 P.2d 322 (holding that the defendant must show that the trial court abused its discretion by denying withdrawal of the plea).

**{10}** Under the Sixth Amendment of the United States Constitution, the defendants in criminal cases have the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Patterson v. LeMaster*, 2001-NMSC-013,

¶ 16, 130 N.M. 179, 21 P.3d 1032. "This right extends to plea negotiations." *State v. Gallegos-Delgado*, 2017-NMCA-031, ¶ 11, 392 P.3d 200. For a guilty plea to be valid, it "must be voluntary and intelligent." *Id.* "If a defendant pleads guilty based on the advice of his or her attorney, whether the plea was voluntary and intelligent depends on whether the attorney's assistance in counseling the guilty plea was ineffective." *Id.* "The district court abuses its discretion . . . when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Paredez*, 2004-NMSC-036, ¶ 5 (internal quotation marks and citation omitted).

{11}　"To evaluate a claim of ineffective assistance of counsel, we apply the two-prong test in [*Strickland*, 466 U.S. at 687]." *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M.719, 204 P.3d 44. "That test places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *Id.*; *see Paredez*, 2004-NMSC-036, ¶ 13. Defendant must satisfy both of these requirements to prove his plea was not knowingly and voluntarily given. *See State v. Tejeiro*, 2015-NMCA-029, ¶ 6, 345 P.3d 1074. If the defendant is prejudiced by the deficient advice, the attorney's representation was ineffective, and the defendant may withdraw the guilty plea. *See Paredez*, 2004-NMSC-036, ¶ 19.

{12}　A specific attack shall be made on any finding, otherwise such finding will be deemed conclusive. *See* Rule 12-318(A)(4) ("A contention that a . . . finding of fact

is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]); *MPC Ltd. v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-021, ¶ 11, 133 N.M. 217, 62 P.3d 308 ("Findings that are not directly attacked are deemed conclusive and are binding on appeal."). Defendant does not make a specific attack as to any of the district court's findings. Instead, Defendant generally argues whether the evidence supported the findings and appears to focus his argument on the court's conclusions of law.

**A.    Paredez**

{13}    *Paredez* obligates the defendant's counsel "to determine the immigration status of their clients." 2004-NMSC-036, ¶ 19.  If their client is not a citizen, counsel is then required to  advise their client of specific immigration consequences associated with entering a guilty plea, "including whether deportation would be virtually certain." *Id.* This Court has held that generally advising a client of the immigration consequences of pleading guilty and the possibility of deportation falls short of meeting the requirements of *Paredez. See State v. Carlos*, 2006-NMCA-141, ¶¶ 15,16, 140 N.M. 688, 147 P.3d 897. This Court reads *Paredez* "to require *at a minimum* that the attorney advise the defendant of the specific federal statutes which apply to the specific charges contained in the proposed plea agreement and of  consequences, as

11

shown in the statutes, that will flow from a plea of guilty." *Carlos*, 2006-NMCA-141, ¶ 15. Any failure to abide with the requirements of *Paredez* renders an attorney's performance deficient, which satisfies the first prong of *Strickland*. *See Paredez*, 2004-NMSC-036, ¶ 19.

**B.      Deficient Performance**

{14}      Defendant contends that his defense counsel was deficient because he was not advised of the specific immigration consequences or his right to a jury trial. Defense counsel's advice on the specific immigration consequences requires an individualized analysis of any apparent immigration consequences for his client, beyond deportation. *See Carlos*, 2006-NMCA-141, ¶ 15. Our Supreme Court has held that defense counsel's advice that a defendant "could" or "might" be deported is "incomplete and therefore inaccurate" because "stating that a person 'may' be subject to deportation implies there is some chance, potentially a good chance, that the person will not be deported." *Paredez*, 2004-NMSC-036, ¶ 15 (alteration, internal quotation marks, and citation omitted); *see State v. Ramirez*, 2012-NMCA-057, ¶ 17, 278 P.3d 569 ("Misadvice, no advice, and general advice all fail to provide the defendant with information sufficient to make an informed decision to plead guilty." (internal quotation marks and citation omitted)), *aff'd sub nom.* 2014-NMSC-023, 333 P.3d 240.

{15}  This Court has held that more is required than a mere discussion of possible deportation consequences. *See Carlos*, 2006-NMCA-141, ¶ 15. In *Carlos*, the only evidence presented was that the defendant's counsel "generally advised clients of the range of different . . . deportation proceedings, advised [the d]efendant . . . about the possible consequences of pleading guilty, and advised [the d]efendant of the utility of retaining counsel specifically to deal with the immigration issue." *Id.* This Court held that this level of advice was insufficient under the *Paredez* standards, because there was not a sufficient discussion about the crime he was charged with, and a discussion about the specific immigration consequences because of those crimes. *See Carlos*, 2006-NMCA-141, ¶ 16 (holding that the attorney should have discussed the specific elements of the crimes he was charged with, and should have indicated how these would have affected his immigration status).

{16}  In support of his motion, Defendant submitted an affidavit from his plea counsel and Defendant testified. The affidavit explained that it was defense counsel's general practice to advise clients of the immigration consequences of a plea, but due to the age of the case could not recall whether he knew Mr. Tarango's immigration status would be affected by the plea, or whether he would be deported if he accepted the plea. There is nothing in the affidavit addressing the substance or lack of substance of discussions between plea counsel and Defendant and his right to a jury trial. The

13

State argues that we weigh plea counsel's general advice against Defendant because of the age of the case, and because the affidavit indicates that defense counsel advised Defendant about the specific immigration consequences. We agree with the State's contention that evidence of plea counsel's inability to recall this particular case is not evidence that he failed to properly advise Defendant. The record reflects that the only thing defense counsel stated in open court about Defendant's immigration status was that as far as he knew Defendant was a legal immigrant. It was the district court, not plea counsel, that noted that the plea may or may not affect Defendant's immigration status. There is no evidence in the record to indicate this was the only conversation Defendant and plea counsel had regarding the specific immigration consequences. The only evidence we do have about any immigration consequences is the guilty plea proceeding document. Defendant confirmed his identity in open court as the person who initialed and signed the guilty plea proceeding document. Specifically, Defendant initialed paragraph nine that states: "That [D]efendant understands that a conviction may have an effect upon [D]efendant's immigration or naturalization status." He also certified "that the judge personally advised me of the matters noted above, that I understand the constitutional rights that I am giving up by pleading guilty and that I desire to plead guilty to the charges stated." Defendant's plea counsel also certified

"that he has conferred with his client with reference to the execution of this affidavit and that he has explained in detail its contents."

{17} Except for four responses, Defendant's testimony in support of his motion consisted of one word answers to his attorney's leading questions. Defendant testified that his plea counsel did not communicate well and only spoke to him when he was in court. Defendant also testified that "they" never informed him that he would lose his residency. In response to his attorney's question if he had known that accepting the plea would have affected his immigration status, whether he would have accepted the plea or gone to trial and Defendant stated that he "would have asked for a trial." Defendant testified on cross-examination that he has four children in the United States, who are American citizens. He has no children or family in Mexico. The district court did not find Defendant's testimony credible. Appellate courts "recogniz[e] that the district court has the best vantage from which to . . . evaluate witness credibility." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. "[T]his Court cannot judge the credibility of witnesses, reweigh the evidence, or make its own findings of fact." *Gallegos v. City of Albuquerque*, 1993-NMCA-050, ¶ 11, 115 N.M. 461, 853 P.2d 163.

{18} Defendant argues that plea counsel did not do an independent investigation to determine whether the plea would actually affect Defendant's immigration status, nor

did he consult an immigration attorney. Defendant also argues that this conviction alone caused him to lose his permanent residency and he will be unable to become a legal permanent resident again. There is nothing in the record to verify exactly what plea counsel did or did not do as far as counseling Defendant on his immigration consequences. The very general affidavit from plea counsel proved nothing, other than plea counsel could not remember the specifics of this seventeen year old case. Defendant also had a 1992 conviction for possession. There is nothing in the record, other than defense counsel's statements, to indicate why Defendant was deported—whether it was the 1992 conviction, the 1997 conviction, or some other reason. *See State v. Cochran*, 1991-NMCA-051, ¶ 8, 112 N.M. 190, 812 P.2d 1338 ("Argument of counsel is not evidence.").

{19} During the June 1997 colloquy Defendant told the district court that he understood the trial process; that he understood that by entering the guilty plea he would be waiving his right to trial, including questioning witnesses on direct and cross-examination; that he had the right to remain silent; that he would be waiving his right to trial and remain silent; that there would be no trial because he would be considered guilty. At his sentencing hearing in July 1998 the district court stated in open court that it assumed Defendant would be deported so the court was proposing the sentence outlined in the plea agreement. It was immediately after this statement

by the court that Defendant asked to address the court. He told the court, through Baca, that "he came for his family and now all he wants to do is return back to Mexico." Notably, Defendant did not raise the issue at sentencing that he was unaware that he would be deported as a result of his guilty plea, rather he declared that he wanted to return to Mexico. We agree with the district court that Defendant's testimony, that he did not know he was going to be deported, that his plea counsel never told him he had the right to a jury trial, nor that the guilty plea to possession of a controlled substance would affect his immigration status is self-serving.

{20}     Since *Paredez,* our courts are hesitant "to rely solely on the self-serving statements of [a] defendant." *Patterson*, 2001-NMSC-013, ¶ 29. Rather, a defendant is required to provide additional evidence to prove that there was a reasonable probability that he would have gone to trial. *See id.* ¶ 31 (stating that the Supreme Court also looked to extrinsic evidence that the defendant had been steadfast in maintaining his innocence, and the strength of the evidence against him to more objectively assess his veracity when stating that he would have taken his chances at trial). In this case, there was no extrinsic evidence presented to the district court. Defendant has failed to make a prima facie showing that plea counsel was ineffective.

{21}     We conclude that there was substantial evidence to support the district court's findings of fact, and it did not abuse its discretion in denying Defendant's motion. *See*

*id.* ¶ 29 ("Because [appellate] courts are reluctant to rely solely on the self-serving statements of [the] defendants, which are often made after they have been convicted and sentenced, a defendant is generally required to adduce additional evidence to prove that there is a reasonable probability that he . . . would have gone to trial.").

**C.     Prejudice**

**{22}**     Because Defendant has failed to prove that his plea counsel's performance was deficient under the first requirement of *Paredez*, we need not address the second requirement of prejudice. *See Tejeiro*, 2015-NMCA-029, ¶ 6 (stating that both requirements must be satisfied for a defendant to prove "his plea was not knowing and voluntary and should be set aside").

**CONCLUSION**

**{23}**     We conclude that the district court did not abuse its discretion in denying Defendant's motion. We therefore affirm the district court's order denying Defendant's motion to withdraw and vacate his guilty plea.

**{24}     IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____

18

**MICHAEL E. VIGIL, Judge**


_____
**STEPHEN G. FRENCH, Judge**