2004-NMSC-036

101 P.3d 799

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Ramon PAREDEZ, Defendant–Petitioner.**

No. 28,270.

Supreme Court of New Mexico.

Aug. 31, 2004.

John Bigelow, Chief Public Defender, Steven J. Potter, Assistant Appellate Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Steven S Suttle, Assistant Attorney General, Albuquerque, NM, for Respondent.

Tova Indritz, Albuquerque, NM, for Amicus Curiae, New Mexico Criminal Defense Lawyers Association, New Mexico Civil Liberties Foundation, and The National Immigration Project of the National Lawyers Guild.

## OPINION

MINZNER, Justice.

{1} Defendant Ramon Paredez pleaded guilty to criminal sexual contact of a minor in the third degree, contrary to NMSA 1978, § 30–9–13(A)(2) (2001). After sentencing, Defendant filed a motion to withdraw his

guilty plea on the basis he was not adequately informed of the immigration consequences of his plea. The district court entered an order denying his motion, which was affirmed by the Court of Appeals in a memorandum opinion. *State v. Paredez*, No. 24,082 (N.M.Ct.App. Aug. 20, 2003). We granted certiorari pursuant to NMSA 1978, § 34–5–14(B) (1972) and Rule 12–502 NMRA 2004. In this opinion, we hold that the district court's admonition to Defendant that his guilty plea "could" affect his immigration status was sufficient advice to satisfy federal due process and Rule 5–303(E)(5) NMRA 2004; however, Defendant's attorney had an affirmative duty to determine his immigration status and provide him specific advice regarding the impact a guilty plea would have on his immigration status. A prima facie case of ineffective assistance of counsel is established by the appellate record; thus, we remand to the district court for an evidentiary hearing on Defendant's claim.

## I

{2} On October 30, 2002, Defendant was charged by information with criminal sexual contact of a minor thirteen to eighteen years of age. A plea agreement was entered on February 4, 2003, which the district court accepted. Defendant's attorney advised the court at the plea hearing that his client was a permanent resident alien from Guatemala and that the attorney had advised him the plea "could" affect his immigration status. Before accepting the plea, the district court addressed Defendant and also informed him his plea "could" affect his status under immigration laws. On February 25, Defendant was sentenced to three years incarceration in the New Mexico Department of Corrections. Consistent with the plea agreement, he received a suspended sentence and was placed on supervised probation for a period of three years. Six days later, on March 3, Defendant filed a motion to withdraw his guilty plea alleging he was not fully informed as to the effect his plea would have on his immigration status. A hearing was held on the motion, after which the district court issued an order denying the motion. Defendant appealed.

{3} The Court of Appeals noted that the district court complied with Rule 5–303(E), which prohibits the district court from accepting a guilty plea without first informing the defendant that the conviction may affect his or her immigration or naturalization status. *Paredez*, No. 24,082, slip op. at 2. The Court rejected Defendant's argument that the district court was required to provide a more specific explanation of the immigration consequences of Defendant's guilty plea. *Id.* at 3. Furthermore, the Court stated that the record was insufficient to address on direct appeal the issue of ineffective assistance of counsel and refused to remand the case for an evidentiary hearing on the issue. *Id.* at 3–4.

{4} If Defendant's guilty plea for criminal sexual contact of a minor stands, he almost certainly will be deported back to Guatemala. Under federal law, "[a]ny alien ... in and admitted to the United States *shall*, upon order of the Attorney General, be removed" if the alien is within a statutorily defined class of deportable aliens. 8 U.S.C. § 1227(a) (2000) (emphasis added). One class of deportable aliens includes those who are convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii). Criminal sexual contact of a minor is an "aggravated felony" as that term is used in § 1227. *See* 8 U.S.C. § 1101(a)(43)(A) (2000) (listing "murder, rape, or sexual abuse of a minor" as within the term). Furthermore, not only did Defendant's plea render him deportable, he is ineligible for discretionary relief from deportation. *See* 8 U.S.C. § 1229b(a)(3) (2000) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien ... has *not* been convicted of any aggravated felony.") (emphasis added). Defendant was not informed by the district court of these consequences of his guilty plea. Also, the record reflects that Defendant's attorney likewise may have failed to inform him that his guilty plea would result in his virtually automatic deportation. We now turn to whether the district court erred in refusing to allow Defendant to withdraw his plea.

## II

{5} "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion." *State v. Garcia*, 1996–NMSC–013, 121 N.M. 544, 546, 915 P.2d 300, 302. The district court abuses its discretion in denying a motion to withdraw a guilty plea "when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* The relevant inquiry is whether Defendant's plea was voluntary and knowing, which requires this Court to examine whether Defendant should have been informed that his guilty plea in this case almost certainly would result in his deportation, and if so, whether it was the responsibility of the district court or his defense attorney to inform him of that consequence.

### A

{6} We first address the district court's role in informing criminal defendants of the immigration consequences of a guilty plea. Whether a district court must advise a defendant of certain consequences of a guilty plea prior to accepting the plea is an issue of law that we review de novo. *See State v. Moore*, 2004–NMCA–035, ¶ 12, 135 N.M. 210, 86 P.3d 635. For the following reasons, we hold that the district court's admonition to Defendant that his plea "could" have an effect on his immigration status was sufficient to satisfy both our Rule 5–303 and the Due Process Clause of the federal constitution. Defendant does not provide any reason for interpreting our state due process clause, N.M. Const. art. II, § 18, differently from its federal counterpart; therefore, we decline to address his argument under our state constitution. *See Compton v. Lytle*, 2003–NMSC–031, ¶ 23 n. 4, 134 N.M. 586, 81 P.3d 39.

{7} By entering a guilty plea, a criminal defendant waives a number of constitutional rights, including his or her privilege against compulsory self-incrimination, right to a jury trial, and right of confrontation. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). There-fore, the United States Supreme Court has held that these waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Defendant contends that his plea was not voluntary or knowing because the district court informed him he "could" be deported as a consequence of his guilty plea, rather than advising him that deportation would automatically result from his plea.

{8} The procedures established in Rule 5–303 "are designed to ensure a guilty plea is made knowingly and voluntarily." *Garcia*, 121 N.M. at 546, 915 P.2d at 302. In this case, the district court strictly complied with Rule 5–303, which provides:

> E. **Advice to defendant.** The court shall not accept a plea of guilty, no contest or guilty but mentally ill without first, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands the following:
>
>     . . . .
>
>     (5) that, if the defendant is convicted of a crime, it may have an effect upon the defendant's immigration or naturalization status.

We deem it advisable for the Rules of Criminal Procedure Committee to review the language of Rule 5–303 and consider whether the district court prior to accepting a defendant's guilty plea must inquire into the immigration status of the defendant and affirmatively determine whether the defendant has been advised by his attorney of the immigration consequences of the plea. *See* Wash. Rev.Code § 10.40.200(2) (2002) ("Prior to acceptance of a plea of guilty ..., the court *shall determine that the defendant has been advised* of the following potential consequences of conviction for a defendant who is not a citizen of the United States: Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.") (emphasis added). However, we cannot conclude that Rule 5–303 as written required more of the district court than informing Defendant that

the plea "could" affect his immigration status. We next consider whether the Due Process Clause of the federal constitution required the district court to have been more specific when informing Defendant of the immigration consequences of his guilty plea.

■ {9} Neither the Supreme Court nor the federal circuits have held that the trial court must inform defendants of all possible consequences flowing from a guilty plea. The trial court only has a duty to ensure that the defendant understands the "direct" consequences of the plea but is under no duty to advise the defendant of the plea's "collateral" consequences. *United States v. Russell*, 686 F.2d 35, 38 (D.C.Cir.1982). Each federal circuit that has directly considered the issue has held that deportation is a collateral consequence of pleading guilty so that the trial court is not required to inform the defendant of the immigration consequences of his or her plea. *El–Nobani v. United States*, 287 F.3d 417, 421 (6th Cir.2002); *United States v. Amador–Leal*, 276 F.3d 511, 517 (9th Cir. 2002); *United States v. Gonzalez*, 202 F.3d 20, 27–28 (1st Cir.2000); *United States v. Osiemi*, 980 F.2d 344, 349 (5th Cir.1993); *United States v. Montoya*, 891 F.2d 1273, 1292–93 (7th Cir.1989); *United States v. Romero–Vilca*, 850 F.2d 177, 179 (3d Cir. 1988); *United States v. Campbell*, 778 F.2d 764, 767 (11th Cir.1985); *Russell*, 686 F.2d at 39; *Michel v. United States*, 507 F.2d 461, 464–66 (2d Cir.1974); *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973). Furthermore, the remaining federal circuits that have not directly addressed the issue have signaled that they would reach the same holding. *See Broomes v. Ashcroft*, 358 F.3d 1251, 1257 n. 4 (10th Cir.2004) (citing with approval cases from sister circuits holding that the trial court is under no duty to inform defendants of the immigration consequences of their guilty pleas); *Kandiel v. United States*, 964 F.2d 794, 796 (8th Cir. 1992) (same).

{10} The circuit courts have reached their conclusions notwithstanding relatively recent federal changes in the law that make deportation virtually automatic for certain offenses. In *Gonzalez*, the First Circuit recently stated:

What renders [a] plea's immigration effects "collateral" is not that they arise "virtually by operation of law," but the fact that deportation is "not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he [or she] has no responsibility."

202 F.3d at 27 (quoted authority omitted); *accord El–Nobani*, 287 F.3d at 421 ("[I]t is clear that deportation is not within the control and responsibility of the district court, and hence, deportation is collateral to a conviction."). Thus, the federal circuits generally agree that the Due Process Clause of the federal constitution does not require the trial court judge to even inform the defendant that his or her plea "may" have deportation consequences.

{11} If the district court's silence regarding the immigration consequences of a defendant's guilty plea does not violate that defendant's federal constitutional right to due process, then it would be illogical for this Court to conclude that the district court's admonition to Defendant in this case that his plea "could" affect his immigration status was constitutionally defective. Accordingly, while it certainly would have been prudent for the district court to have been more specific in its admonition to Defendant or to inquire into Defendant's understanding of the deportation consequences of his plea, we hold that the district court was not constitutionally required to advise Defendant that his guilty plea to criminal sexual contact of a minor almost certainly would result in his deportation.

**B**

■ {12} Our conclusion that the district court did not err in its admonition to the Defendant does not mean that Defendant's attorney was relieved from informing him that he almost certainly would be deported if his guilty plea was accepted by the court. In fact, "[d]efense counsel is in a much better position to ascertain the personal circumstances of his [or her] client so as to determine what indirect consequences the guilty plea may trigger." *Michel*, 507 F.2d at 466. As the California Supreme Court recently

noted, a sufficient advisement from the trial court regarding the immigration consequences of a defendant's plea "does not entail that [the defendant] has received effective assistance of counsel in evaluating or responding to such advisements." *In re Resendiz*, 25 Cal.4th 230, 105 Cal.Rptr.2d 431, 19 P.3d 1171, 1178 (2001). Therefore, we now address the role of criminal defense attorneys in informing their clients of the immigration consequences of a guilty plea.

▆▆▆ {13} The United States Supreme Court has stated that "[w]here … a defendant is represented by counsel during the plea process and enters his [or her] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). The two-part standard delineated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to ineffective-assistance claims arising out of a plea agreement. *Hill*, 474 U.S. at 58, 106 S.Ct. 366. To establish ineffective assistance of counsel, a defendant must show: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

▆▆▆ {14} As for the deficient performance prong of the *Strickland* test, the inquiry is whether the "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. This inquiry requires us to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

▆▆▆ {15} We agree with those jurisdictions that have held that "an affirmative misrepresentation by counsel as to the de-portation consequences of a guilty plea is today objectively unreasonable." *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002); *accord State v. Rojas–Martinez*, 73 P.3d 967, 970 (Utah Ct.App.2003), *cert. granted*, 80 P.3d 152 (Utah 2003). If a defendant's attorney informs him or her that deportation will not be a consequence of a guilty plea when the guilty plea renders deportation a possibility, then the attorney's performance would be deficient. Also, when a defendant's guilty plea almost certainly will result in deportation, an attorney's advice to the client that he or she "could" or "might" be deported would be misleading and thus deficient. As the Oregon Court of Appeals recently noted while relying on the state constitutional protection of the right to counsel:

> [S]tating that a person "may" be subject to deportation implies there is some chance, potentially a good chance, that the person will not be deported. That is an incomplete and therefore inaccurate statement if made to an alien considering whether to plead guilty to an aggravated felony.

*Gonzalez v. State*, 191 Or.App. 587, 83 P.3d 921, 925 (2004); *accord Rojas–Martinez*, 73 P.3d at 970 (addressing the advice that conviction of the aggravated felony of sexual abuse of a minor "might or might not" result in deportation).

▆▆▆ {16} We go one step further, though, and hold that an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would also be deficient performance. In reaching this holding we recognize that the Tenth Circuit has held "deportation remains a collateral consequence of a criminal conviction, and counsel's failure to advise a criminal defendant of its possibility does not result in a Sixth Amendment deprivation." *Broomes*, 358 F.3d at 1257. We refuse to draw a distinction between misadvice and non-advice; therefore, we depart from the Tenth Circuit's holding for three reasons.

{17} First, in many cases, there will only be a tenuous distinction between the two. Whether an attorney provides no advice regarding immigration consequences or general advice that a guilty plea "could," "may," or "might" have an effect on immigration status,

the consequence is the same: the defendant did not receive information sufficient to make an informed decision to plead guilty. Second, distinguishing between misadvice and non-advice would "naturally create a chilling effect on the attorney's decision to offer advice," because if the attorney's advice regarding immigration consequences is incorrect, the attorney's representation may be deemed "ineffective." John J. Francis, *Failure to Advise Non–Citizens of Immigration Consequences of Criminal Convictions: Should This Be Grounds to Withdraw a Guilty Plea?*, 36 U. Mich. J.L. Reform 691, 726 (2003). Third, not requiring the attorney to specifically advise the defendant of the immigration consequences of pleading guilty would "place[ ] an affirmative duty to discern complex legal issues on a class of clients least able to handle that duty." *Id.; see also In re Alvernaz*, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 753 (1992) ("Although [the decision to plead guilty] ultimately is one made by the defendant, it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain.").

{18} Deportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea, so that "in many misdemeanor and low-level felony cases … [he or she] is usually much more concerned about immigration consequences than about the term of imprisonment." Jennifer Welch, Comment, *Defending Against Deportation: Equipping Public Defenders to Represent Noncitizens Effectively*, 92 Cal. L.Rev. 541, 545 (2004). The American Bar Association has recognized as much by stating that "it may well be that many clients' greatest potential difficulty, and greatest priority, will be the immigration consequences of a conviction." ABA Standards for Criminal Justice: Guilty Pleas § 14–3.2 cmt., at 127 (3d ed.1999). Therefore, under the ABA Standards for Criminal Justice, "defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea." *Id.* § 14–3.2(f).

{19} We hold that criminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain. Proper advice will allow the defendant to make a knowing and voluntary decision to plead guilty. Furthermore, requiring the attorney to give such advice is consistent with the spirit of Rule 5–303(E)(5), which prohibits the district court from accepting a guilty plea without first determining that the defendant has an understanding of the immigration consequences of the plea. An attorney's failure to provide the required advice regarding immigration consequences will be ineffective assistance of counsel if the defendant suffers prejudice by the attorney's omission.

{20} As for the prejudice prong of the *Strickland* test, the inquiry is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. "In other words … the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Id.* In this case, Defendant must show "he would not have entered into the plea agreement if he had been given constitutionally adequate advice about the effect that his guilty plea would have on his immigration status." *Gonzalez,* 83 P.3d at 925; *accord In re Resendiz,* 105 Cal.Rptr.2d 431, 19 P.3d at 1187.

{21} The record on appeal contains the following statement by Defendant's attorney at the plea hearing: "[M]y client is … an alien from Guatemala, and I have advised him that the plea agreement, as he has approved, could affect his status as an immigrant." There is a strong inference to be drawn from this statement that Defendant's attorney failed to advise him that he almost certainly would be deported if the district court accepted his plea agreement. It also would be logical to infer from the fact that Defendant filed a motion to withdraw his guilty plea only six days after he was sentenced that Defendant would not have plead-

ed guilty if he had known beforehand of this dire consequence. However, we cannot conclusively determine from the facts in the appellate record that the defense attorney failed in his duty to advise Defendant of the immigration consequences of pleading guilty to criminal sexual contact of a minor or that Defendant would not have pleaded guilty to that offense if he had been given adequate advice.

{22} In past cases, we have held when the record does not contain all the facts necessary for a full determination of the issue, "an ineffective assistance of counsel claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002–NMSC–027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "Such a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel." *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992). In this case, Defendant received substantial benefit from his plea agreement he received a suspended sentence and was placed on probation. It is conceivable that a non-citizen might opt to plead guilty and accept deportation to avoid serving a prison sentence, rather than face the possibility of both incarceration and deportation. A defense attorney could rationally advise the client to accept this type of plea agreement. However, we can conceive of no tactical reason for an attorney's failure to inform the client that accepting the plea almost certainly would result in the client's deportation. The record indicates that there is a distinct possibility that Defendant's attorney failed to adequately inform him of the immigration consequences of his plea, and if Defendant had been properly advised, he would not have pleaded guilty. Thus, we believe Defendant has established a prima facie case of ineffective assistance of counsel.

{23} Furthermore, in this case, habeas corpus would not be a viable alternative to remand. Once Defendant has exhausted his direct appeal, he could be immediately deported to Guatemala. *See* 8 U.S.C. § 1229(d)(1) (2000) ("In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction."); *Montilla v. INS*, 926 F.2d 162, 164 (2d Cir.1991) (stating that "conviction is considered final and a basis for deportation when appellate review of the judgment not including collateral attacks has become final").

{24} For these reasons, we conclude it is appropriate to remand to the district court for an evidentiary hearing on Defendant's ineffective assistance of counsel claim. At the evidentiary hearing, Defendant may present evidence supporting his claim. After applying the standards articulated in this opinion, if the district court finds that Defendant in fact received ineffective assistance of counsel, then Defendant must be allowed to withdraw his guilty plea. The court shall retain jurisdiction over Defendant until his appeals have been exhausted.

### III

{25} We hold in this case that the district court fulfilled its duty in informing Defendant that his guilty plea "could" affect his immigration status, but Defendant's attorney had an affirmative duty to determine his immigration status and advise him that he almost certainly would be deported if he pleaded guilty to criminal sexual contact of a minor. The facts in the appellate record are insufficient for this Court to conclude that Defendant received ineffective assistance of counsel. However, the appellate record establishes a prima facie case of ineffective assistance; thus, we remand to the district court for an evidentiary hearing on the matter.

{26} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PATRICIO M. SERNA, RICHARD C. BOSSON, and EDWARD L. CHÁVEZ, Justices.