This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38736

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARLOS FRANCO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Stone & Associates
B. W. Stone
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Carlos Franco appeals his conviction for possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2021).[1] Defendant argues on appeal that (1) the district court abused its discretion by limiting Defendant's cross-examination of the arresting officer, (2) Defendant's counsel was ineffective by failing to recall the arresting officer and not objecting to the admission of

---

[1]Because Defendant was charged under the 2011 version of the statute, references in this opinion to Section 30-31-23 refer to the 2011 version unless stated otherwise. *See State v. Figueroa*, 2020-NMCA-007, ¶ 8, 457 P.3d 983 ("[T]he law in effect at the time a criminal offense is committed is controlling.").

State's Exhibit 2, and (3) admission of State's Exhibit 2 constituted fundamental error. We hold that the district court did not abuse its discretion by limiting the cross-examination of Officer Bradley. We also hold that Defendant failed to make a prima facie showing of ineffective assistance of counsel. Finally, we hold the admission of State's Exhibit 2 did not constitute fundamental error. We therefore affirm.

**BACKGROUND**

**{2}** On July 10, 2016, the Roswell Police Department dispatched officers to a hotel in response to a call that Defendant was threatening staff. When the officers arrived, Defendant had already left the hotel. Officers later received calls of a subject matching Defendant's description. Officer Bradley then located Defendant in an empty field "acting erratic" like "he was on narcotics." Officer Bradley detained Defendant, and Defendant disclosed that he had a knife in his pocket. Officer Bradley searched Defendant for any objects that could be weapons. After finding and retrieving the knife, Officer Bradley placed Defendant in the back of his patrol unit, requested an ambulance, and transported Defendant back to the hotel where the ambulance was waiting.

**{3}** Officer Bradley then drove four to five blocks away from the hotel and realized he had not inspected the back seat of his patrol unit. He immediately pulled over and found a "clear Ziploc bag with a white crystalline substance inside of it" on his back passenger-side floorboard. Officer Bradley returned to the hotel and handed the bag to Officer Frosh who placed it into an evidence bag. Defendant was subsequently charged with possession of a controlled substance, contrary to Section 30-31-23(E).

**{4}** Defendant was tried twice, and the State presented Officer Bradley as a witness at both of Defendant's trials. At the first trial, during cross-examination, Officer Bradley testified he performed a *Terry* frisk on Defendant while he was detained. Officer Bradley explained he is required to check individuals for weapons, but not for contraband, when placing someone in his patrol unit. Defense counsel asked Officer Bradley if departmental policy required a thorough search, and he responded that he was required to do a thorough search for weapons.

**{5}** When defense counsel asked what Officer Bradley was "supposed to do" to check his vehicle in the morning and whether he was "supposed to do a walk around" or look inside the vehicle, Officer Bradley responded that it was not required. Defense counsel emphasized that Officer Bradley "basically did what [he wasn't] supposed to" when he left the scene without searching the back of his patrol unit. Officer Bradley explained that he did search his patrol unit, although not immediately.

**{6}** Defense counsel ended cross-examination by asking, "Would [it] have been very easy to either photograph the evidence where [he] found it or have [his] Taser camera on?" Officer Bradley answered, "Absolutely. I am not going to lie; I did make mistakes . . . on not searching right away or taking photographs." The trial resulted in a hung jury, and the district court declared a mistrial.

**{7}** During the second trial, on direct examination, Officer Bradley testified that he searched the back of his unit shortly after leaving the scene. Officer Bradley stated he found "a clear Ziploc bag with a white crystalline substance inside of it" on the passenger-side floorboard during the search. After he found the Ziploc bag, he returned to the hotel and handed it to Officer Frosh, who placed it in an evidence bag.

**{8}** In preparation for trial, Officer Bradley retrieved the bag from the Roswell Police Department evidence unit. He identified the bag as State's Exhibit 2 and stated that the bag was inside a Roswell Police Department evidence bag, that the label on the bag showed that he collected the bag on July 10, 2016, and that he had identified Defendant as the suspect. Officer Bradley confirmed that the bag appeared to "be in the same or substantially similar condition as when [he] found it in the back seat of [his] patrol unit."

**{9}** Officer Bradley testified his patrol unit was secured during Defendant's detention. Officer Bradley also explained that Defendant's detention was the first call for service he responded to that day, and that he checked his vehicle for contraband prior to going home the night before. The bag of white, crystalline substance was admitted without objection.

**{10}** During cross-examination at the second trial, defense counsel asked, "So your departmental policy in Section 114.005, regarding the search of persons transported in your vehicle, that requires you to do a search of them, right?" Officer Bradley responded that he did not have the policy in front of him, and when asked to affirm he was familiar with it, he explained that the policy was long and he could not answer what the policy said specifically. Defense counsel followed up by asking, "So would it surprise you that that policy says that you're supposed to ensure that there's no contraband on the person?" Officer Bradley informed defense counsel that he would have to look at the policy to know for sure what it said.

**{11}** The State objected to the line of questioning, arguing that it was improper because defense counsel was reading from something that had not been disclosed to the State. Defense counsel argued they were not reading the policy to the jury. The district court ruled the line of questioning was improper impeachment and sustained the objection.

**{12}** Defense counsel asked Officer Bradley, "When you are transporting somebody, your training would tell you it's a good idea to search the individual, right?" Officer Bradley answered that he conducted the *Terry* frisk instead of a full search to protect the individual's rights. Defense counsel inquired if Officer Bradley had to ensure if Defendant had contraband on his person, and Officer Bradley responded that he was looking for weapons, not contraband, on Defendant.

**{13}** Defense counsel also asked Officer Bradley whether it was common practice and consistent with training to search his police unit at the beginning of the shift. Officer Bradley stated that it was not necessary. Defense counsel followed up by asking if it was a good idea to search the unit at the beginning of a shift, and Officer Bradley

agreed it could be. Defense counsel then asked if Officer Bradley did a search of the back seat of his unit after transport on this date, and he responded that he did not. Defense counsel ended cross-examination by asking, "So there were problems with the way this case was handled . . . and with your training . . . and the procedures and things that you guys follow as policemen, is that right?" Officer Bradley answered yes to each of these questions.

**{14}** After the State's redirect, defense counsel asked Officer Bradley to remain subject to recall as a possible rebuttal witness. After the State rested, defense counsel also rested without recalling Officer Bradley. The jury found Defendant guilty of one count of possession of a controlled substance. This appeal followed.

## DISCUSSION

**{15}** Defendant argues that (1) the district court abused its discretion by limiting cross-examination of Officer Bradley during Defendant's second trial, (2) his counsel was ineffective for not recalling Officer Bradley during the second trial and for not objecting to the admission of State's Exhibit 2, and (3) the admission of the State's Exhibit 2 constituted fundamental error. We address each of these arguments in turn.

## I.    Limiting Cross-Examination of Officer Bradley

**{16}** Defendant asserts the district court abused its discretion by ruling that questioning Officer Bradly with the police procedure manual was improper impeachment. He further argues that because the questions were proper impeachment and the manual was not offered as evidence, Defendant did not violate the duty of disclosure to the State by using the police procedure manual. The State responds that the district court did not abuse its discretion in sustaining the prosecution's objection, and the district court did not preclude defense counsel from asking about department practices when searching a patrol vehicle.

**{17}** "We review the district court's evidentiary rulings for an abuse of discretion." *State v. Garnenez*, 2015-NMCA-022, ¶ 29, 344 P.3d 1054. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). We hold that the district court did not abuse its discretion by sustaining the objection and explain.

**{18}** "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 11-602 NMRA. Defendant argues the questioning was proper impeachment because "Officer Bradley's testimony on direct examination touched upon his discovery of putative evidence," and defense counsel was attempting to cross-examine Officer Bradley's personal knowledge of the policies of the police department. Defense counsel's line of questioning attempted to introduce quoted sections of the policy into the record through Officer Bradley's testimony without a proper foundation. Officer Bradley testified that the policies were lengthy, he could not testify as to the content of the policy, and he would

need to see the policy to know what it said. The "proper way to conduct the impeachment" would have been to establish the content of the policy and then impeach Officer Bradley's understanding of it—counsel is not permitted to introduce facts not in evidence through questions. *See State v. McClaugherty*, 2008-NMSC-044, ¶ 41, 144 N.M. 483, 188 P.3d 1234 (internal quotation marks and citation omitted) (explaining that counsel "may not introduce facts not in evidence through his or her questions").

**{19}** Even if the impeachment was improper, Defendant asserts he "had no intention of introducing the policy manual into evidence" and the manual was only used during cross-examination to question Officer Bradley about his knowledge of these policies. As such, Defendant contends he did not need to disclose the manual to the State. *See* Rule 5-502(A)(1) NMRA (requiring disclosure of "books, papers, documents, photographs, tangible objects, or copies or portions thereof . . . the defendant intends to introduce in evidence at the trial"). But Defendant was capable of questioning Officer Bradley about his knowledge of departmental policy and his failure to follow the policy without reading the policy into the record. During the second trial, defense counsel asked Officer Bradley about training and departmental practices regarding the search of individuals and police units. Similarly, defense counsel questioned Officer Bradley regarding his failure to follow policy by questioning him about his course of conduct.

**{20}** Defense counsel's line of questioning was improper impeachment during the second trial because counsel attempted to read the policy manual into evidence without a proper foundation. We hold that the district court did not abuse its discretion by limiting the cross-examination of Officer Bradley.

## II.     Ineffective Assistance of Counsel

**{21}** Defendant claims that defense counsel was ineffective in failing to recall Officer Bradley as a rebuttal defense witness to raise the issue of his knowledge of departmental policies. The State argues that Defendant has not made a prima facie case of ineffective assistance of counsel.

**{22}** "To establish [a prima facie case of] ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799 (internal quotation marks and citation omitted). "However, there is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "We review claims of ineffective assistance de novo." *State v. Rivas*, 2017-NMSC-022, ¶ 23, 398 P.3d 299.

**{23}** Defendant alleges that defense counsel was ineffective by failing to recall Officer Bradley to raise the issue of his knowledge of departmental policies. "The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 47, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). As we concluded above, the record shows that

defense counsel was able to question Officer Bradley on cross-examination about his departure from the policy without reading the policy language into the record. Therefore, it appears that counsel's decision not to recall Officer Bradley was a matter of trial tactics and strategy not to present repetitive testimony.

**{24}** To the extent Defendant argues that the hung jury verdict of the first trial, where such questioning about policy language was allegedly allowed, shows that defense counsel's alleged error resulted in prejudice, we disagree. The record reveals that the questioning in the first trial was very similar to the questioning in the second trial. Defendant did not need to recall Officer Bradley to highlight deficiencies in his conduct because defense counsel had already covered that subject during cross-examination. We are therefore unpersuaded that trial counsel's approach fell below that of a reasonably competent attorney and was prejudicial. Therefore, we hold that Defendant failed to show a prima facie case of ineffective assistance of counsel with regard to counsel's decision not to recall Officer Bradley.

### III.    Fundamental Error

**{25}** Defendant claims "it was fundamental error for the [district] court to admit the drugs despite a deficient chain of custody." The State asserts that the exhibit was authenticated and that its admission did not result in fundamental error.

**{26}** "Under the doctrine of fundamental error, an appellate court has the discretion to review an error that was not preserved in the [district] court to determine if a defendant's conviction shocks the conscience because either (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Astorga*, 2015-NMSC-007, ¶ 14, 343 P.3d 1245 (alteration, internal quotation marks, and citation omitted). "When reviewing for fundamental error, we first determine if error occurred; if so, we next determine whether that error was fundamental." *Id.* (internal quotation marks and citation omitted). We hold that no fundamental error occurred and explain.

**{27}** To authenticate or identify a piece of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 11-901(A) NMRA. A witness with knowledge can testify that the item is what it is claimed to be. Rule 11-901(B)(1). To admit real evidence, the evidence "must be identified either visually or by establishing custody of the object from the time of seizure to the time it is offered into evidence." *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. There is no requirement for the State to "establish the chain of custody in sufficient detail to exclude all possibility of tampering." *Id.* Any questions arising from a possible gap in the chain of custody goes to the weight of the evidence and not to its admissibility. *Id.* The district court has the discretion to admit evidence, and there is no abuse of discretion when the evidence is shown by preponderance of the evidence that it is what it purports to be. *Id.*

**{28}** Here, Officer Bradley identified State's Exhibit 2 during his testimony as the bag he found in the back of his patrol unit and handed to Officer Frosh, who then placed it in an evidence bag. Officer Bradley confirmed that the small bag of white, crystalline substance presented at trial appeared to "be in the same or substantially similar condition as when [he] found it in the back seat of [his] patrol unit." Officer Bradley further testified that the evidence tag on the bag had the date he discovered the bag and Defendant's name. In addition, he testified that the vehicle was secured during the detention of Defendant, Defendant was his first call for service that day, and he had checked his vehicle for contraband prior to going home the night before. This testimony is sufficient to authenticate State's Exhibit 2, and the district court did not commit fundamental error by admitting the exhibit into evidence.[2]

**CONCLUSION**

**{29}** For the forgoing reasons, we affirm.

**{30}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**

---

[2]Because we conclude a sufficient foundation supported the admission of State's Exhibit 2, we do not address Defendant's claim that counsel was ineffective for failing to object to the admission of the exhibit.